CNA LLOYDS OF TEXAS, Appellant,

v.

ST. PAUL INSURANCE COMPANY,
Appellee.

No. 03–94–00355–CV.

Court of Appeals of Texas,
Austin.

June 21, 1995.

Rehearing Overruled Aug. 16, 1995.

**658**

Ruth Muelker, Robert B. Summers, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Austin, for appellant.

Douglas W. Alexander, Kay Andrews, Brown McCarroll & Oaks Hartline, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

Appellant CNA Lloyds of Texas ("CNA") appeals from a summary judgment granted in favor of appellee St. Paul Insurance Company ("St. Paul"). St. Paul demanded reim- bursement from CNA for money St. Paul alleged it overpaid in a settlement the two insurance companies funded. We will affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In the underlying lawsuit, Faye Dianne Harris brought claims of dental malpractice and gross negligence against her dentist, Dr. Oliver Strom. The alleged acts of malprac- tice began on August 12, 1985, and continued through June 24, 1987. Strom held liability insurance policies providing coverage for the years in which his alleged acts of malpractice occurred. Strom's policy with St. Paul pro- vided coverage for claims based on events occurring from October 28, 1984, to October 28, 1985. The liability limit of the St. Paul policy was $100,000 per claim. Strom's poli- cy with CNA provided coverage, as renewed, for claims based on events occurring from October 28, 1985, to October 28, 1987. The liability limit of the CNA policy was $1,000,- 000 per claim. It is undisputed that the St. Paul and CNA policies provided consecutive coverage for distinct policy periods; at no time during the three relevant coverage years did the two policies overlap. However, it is also undisputed that continuous acts of malpractice resulted in one injury which trig- gered coverage under both insurance poli- cies.[1]

Before trial, the insurers reached a settle- ment with Harris for $262,500. CNA con- tributed $162,500 toward the settlement, and St. Paul contributed its $100,000 policy limit. At the time of settlement, St. Paul expressed its intent to seek recovery against CNA for reimbursement of money St. Paul believed it overpaid in the settlement. St. Paul based its reimbursement claim on the "other insur- ance" clause in its policy. That clause pro- vides that if a claim covered under the St. Paul policy is also covered under another insurance policy, St. Paul will contribute only its pro rata share of the total amount of insurance covering the claim up to its cover- age limits.

---

1. The *parties have stipulated to the following:* "The claim made by Ms. Harris in the underlying case, which was settled w/the consent of both ins. companies, would be a covered claim under each insurance company's policy."

On March 25, 1993, St. Paul filed this lawsuit for subrogation and reimbursement against CNA, seeking reimbursement of $76,136.36, the portion of the settlement it paid which it alleged exceeded its pro rata share.[2] After a series of motions, the trial court granted summary judgment in favor of St. Paul.[3] CNA now appeals from the trial court's final judgment, asserting three points of error.

## DISCUSSION

▪■ The standards for reviewing a summary judgment are well established. A movant for summary judgment must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). All evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* at 548–49. When, as in the instant case, the trial court's order does not specify the basis or theory upon which the motion is granted, the summary judgment must be affirmed on *any* meritorious theory of recovery. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

■ In its first and second points of error, CNA contends that the trial court erred in granting summary judgment for St. Paul because St. Paul's "other insurance" clause does not apply when other insurance like CNA's provides consecutive, not concurrent, coverage; instead, "other insurance" clauses apply only when more than one insurance policy provides concurrent coverage. In support of its position, CNA cites *St. Paul Fire & Marine Insurance Co. v. Vigilant Insurance Co.*, 919 F.2d 235, 241 (4th Cir.1990), for the proposition that "when policies provide consecutive coverage rather than concurrent coverage, 'other insurance' clauses are simply inapplicable." *Id.*

■ We agree that the "other insurance" clauses contained in the St. Paul and CNA policies apply to claims covered by more than one insurance policy.[4] When the language of an insurance policy is unambiguous, we must

2. Using the mathematical formula described in its "other insurance" clause, St. Paul claims entitlement to $76,136.36. This dollar amount is derived by dividing the liability limit of each individual policy by the sum of the liability limits of the two insurers (i.e., $1,000,000 CNA policy limit + $100,000 St. Paul policy limit = $1,100,000 total. $100,000 St. Paul policy limit divided by $1,100,000 total = 1/11 or 9%). Nine percent of the $262,500 settlement amount is $23,863.64, the dollar amount St. Paul maintains it was responsible for paying in the settlement. Thus, St. Paul claims entitlement to $76,136.36 from CNA—the difference between St. Paul's $100,000 settlement contribution and its alleged proper payment of $23,863.64.

3. Originally, both parties filed motions for summary judgment. On January 5, 1994, the trial court granted St. Paul's motion for partial summary judgment and denied CNA's motion. Apparently, the trial court granted St. Paul a partial summary judgment rather than a final judgment because it believed St. Paul had other pending causes of action against CNA. St. Paul subsequently filed another motion for partial summary judgment to recover attorney's fees incurred in pursuing its reimbursement claim. On March 14, 1994, the trial court awarded attorney's fees to St. Paul and reformed the previous partial summary judgment into a final order, rendering St. Paul's second motion for partial summary judgment moot.

4. St. Paul's "other insurance" clause provides:

A professional liability claim that's covered under this agreement may also be covered under other insurance. If it is, we'll pay that portion of the total amount of insurance covering the claim. But we won't pay more than our limits of coverage. For example:

*Your limit of coverage under this agreement is $300,000. You have another insurance policy with a limit of $200,000. Both policies cover the same claim. We won't pay more than 60% ($300,000/$500,000) of the claim, up to the limits of coverage.*

CNA's "other insurance" clause provides:

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company [CNA] shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

. . . .

(b) *Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares, the company [CNA] shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

give the words used their ordinary meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). The St. Paul "other insurance" clause applies when a claim covered by the St. Paul policy is also "covered under other insurance." Likewise, the CNA "other insurance" clause applies when both the CNA policy "and other insurance apply to the loss." The parties do not dispute that Harris's claim of a continuing occurrence of malpractice triggered coverage under both policies or that the claim "would be a covered claim under each insurance company's policy." [5] Regardless of the usual coverage provided by the two successive insurance policies, the parties' stipulation indicates that the insurance coverage of *Harris's claim* is concurrent, contrary to CNA's assertions. We conclude that the plain language of each policy's "other insurance" clause renders those clauses applicable to this cause for apportionment purposes.

■ Nevertheless, CNA further contends that St. Paul's "other insurance" clause requires "stacking," in other words, an adding up of limits provided under the applicable insurance policies to provide a grand total limit of coverage. Such "stacking," CNA argues, contravenes the supreme court's opinion in *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994), and therefore cannot apply to this cause for determining apportionment. In *American Physicians*, the Texas Supreme Court ruled that for indemnity purposes, coverage under consecutive insurance policies "could not be 'stacked' to multiply coverage for a single claim involving indivisible injury." *Id.* at 853. The court explained, "If a single occurrence triggers more than one policy, covering different policy periods, then different [policy] limits may have applied at different times." *Id.* at 855. Consequently, a triggering of multiple policies, while provid-

ing multiple funding sources, does not lead to a conclusion that the total coverage available exceeds the policy limit in every policy purchased by the insured. *Id.* Instead, the total coverage available must be the highest liability limit available under any of the multiple policies covering the claim. *Id.*

*American Physicians* does not squarely address the issue presented to us today. Cases involving multiple consecutive insurers and one claim based on a continuous occurrence can involve three separate determinations: 1) trigger of coverage, (2) extent of coverage, and (3) allocation of liability among multiple insurers. See *Keene Corp. v. Insurance Co. of N. Am.*, 667 F.2d 1034, 1042 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 1645, 71 L.Ed.2d 875 (1982). In this cause, the question of coverage is controlled by stipulation; both parties stipulated that their respective policies each provide coverage for the claim. *American Physicians* addresses the second inquiry, the issue of an insured's entitlement to indemnification from its respective insurers. Again, this issue is not before us. Instead, we are confronted with the third identified inquiry, the allocation of liability among multiple insurers.

*Keene*, a case involving consecutive insurance coverage for an asbestos-disease claim, offers some instruction in this regard.[6] The *Keene* court first addressed the trigger of coverage and extent of coverage issues. The court found that the single claim triggered the consecutive insurance policies and held, for the same reasoning set forth in *American Physicians*, that an insured may collect the policy limits of only one of several consecutive insurance policies covering one claim. *Keene*, 667 F.2d at 1049. "Stacking" was not permitted. *Id.*

---

5. This case does not require us to determine whether Harris's claim triggered coverage under one or both of the insurance policies. The coverage trigger issue for continuing occurrences has troubled courts across the country in recent years, and Texas has limited precedent on that issue. See *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853 n. 20 (Tex.1994). One court suggests that the theory used to trigger insurance policy coverage for continuing occur-

rences determines whether insurers with consecutive policies are liable for consecutive or concurrent coverage. See *Northern States Power Co. v. Fidelity & Casualty Co.*, 523 N.W.2d 657, 662 (Minn.1994).

6. *American Physicians* relies in part on the *Keene* court's reasoning. *American Physicians*, 876 S.W.2d at 854.

The court then addressed the allocation of liability issue, holding that once coverage under an insurance policy is triggered, an insurer is liable up to its policy limits, subject to "other insurance" clauses. *Id.* at 1047, 1048. The court explained, "There is *nothing* in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period." *Id.* at 1048. Thus, the insurer was obligated to pay the full amount of damages due "subject only to the provisions in the policies that govern the allocation of liability when more than one policy covers an injury." *Id.* at 1050. The *Keene* court assured that its holding did not mean "that a single insurer will be saddled with full liability for any injury. When more than one policy applies to a loss, the 'other insurance' provisions of each policy provide a scheme by which the insurers' liability is to be apportioned." *Id.* We believe *American Physicians* echoed *Keene*'s assurance by stating: "Once the applicable limit [of coverage] is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights." *American Physicians,* 876 S.W.2d at 855.

Similarly, the insurance policies in the instant case, like those analyzed in *Keene,* do not provide for a reduction of the insurer's liability limits if an injury only partially occurs during a policy period. Instead, both policies contract to pay the sums the insured becomes legally obligated to pay, not merely a pro rata portion of that amount. The St. Paul policy provides: "We'll pay amounts you're legally required to pay for damages resulting from: Professional services that you provided or should have provided." The CNA policy provides: "[CNA] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: ... injury arising out of the rendering of or failure to render, during the policy period, professional services by the individual insured...." Consequently, once triggered, both the St. Paul and CNA policies provide full coverage, up to policy limits, for Harris's entire claim.

St. Paul's "other insurance" clause provides that when other insurance covers a claim also covered by St. Paul insurance, St. Paul will pay its pro rata portion of the total amount of insurance covering the claim. The total amount of insurance covering Harris's claim includes the full liability limits of both the St. Paul and CNA insurance policies. While an insured's indemnity amount may not be calculated through stacking, the allocation of each insurer's liability for the settlement of Harris's claim must be determined by adding the liability limits of each insurer. If the trial court relied on St. Paul's "other insurance" clause in its grant of summary judgment, it did not err by doing so. We overrule CNA's first and second points of error.

CNA contends in parts B and C of its third point of error that even if St. Paul's policy establishes a right to reimbursement, St. Paul cannot assert that right because it voluntarily contributed its policy limits to the settlement, and, consequently, the trial court erred in granting summary judgment. We disagree. St. Paul did not voluntarily contribute to the settlement amount; pursuant to its insurance policy, St. Paul had a contractual duty to defend any claim against Strom. St. Paul protested from the outset that its contribution toward settlement should not exceed nine percent and reserved its rights to proceed against CNA. Because it was not a volunteer, St. Paul was entitled to equitable subrogation against CNA. *See Employers Casualty Co. v. Transport Ins. Co.,* 444 S.W.2d 606, 609–10 (Tex.1969) (rejecting remedy of contribution between carriers with a mutual insured but recognizing remedy of equitable subrogation even if contractual subrogation was not authorized by applicable insurance policy); *Liberty Mut. Ins. Co. v. General Ins. Corp.,* 517 S.W.2d 791, 797–98 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.); *see also American Physicians,* 876 S.W.2d at 855 ("Once the applicable limit [of coverage] is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights."). We overrule parts B and C of CNA's third point of error.

Having overruled CNA's first and second points of error and parts B and C of its third

**662**

point of error, and in the absence of any fact issues, we conclude the trial court could have correctly determined that St. Paul was entitled to judgment as a matter of law. Our conclusion precludes the need to reach part A of CNA's third point of error. Consequently, we affirm the trial court's summary judgment. *See Ricane Enters.,* 772 S.W.2d at 79.