NUMBER 13-06-089-CV

 

                                        COURT OF APPEALS                         

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS CHRISTI - EDINBURG 

                                                
                                                                     

 

MARYLAND
CASUALTY COMPANY,

NATIONAL
STANDARD INSURANCE COMPANY,

AND MARYLAND LLOYDS,                                              
Appellants,

 

v.

 

SOUTH TEXAS MEDICAL CLINICS, P.A.,                                     
Appellee.

     
                                                                                                                                 

                             On
appeal from the 23rd District Court

of Wharton County, Texas.

                                                           
                                                          

 

                               MEMORANDUM
OPINION

 

                       Before
Justices Yañez, Rodriguez, and Garza

                            Memorandum
Opinion by Justice Garza                       








This is a summary
judgment case in which appellants, Maryland Casualty Company, National Standard
Insurance Company, and Maryland Lloyds (collectively AMaryland@), dispute
their duty to defend appellee, South Texas Medical Clinics, P.A. (ASTMC@), in an
underlying lawsuit against STMC for sexual discrimination, negligence,
intentional infliction of emotional distress, and invasion of privacy.[1]  STMC, as cross-appellant,
disputes the trial court=s allocation
of its defense costs.  The trial court granted, in part, STMC=s motion for partial summary judgment
and denied Maryland=s
cross-motion for summary judgment and its supplemental cross-motion for summary
judgment.  By three issues, taken out of order, Maryland contends that the
judgment rendered by the trial court should be reversed because:  (1) the
underlying lawsuit does not allege facts which state a claim for false
imprisonment, thus rendering the trial court=s granting of STMC=s motion for
partial summary judgment improper; (2) the underlying lawsuit does not allege
facts which state a claim for invasion of privacy, thus rendering the trial
court=s granting of STMC=s motion for partial summary judgment
improper; and (3) the fortuity doctrine precludes any duty to defend STMC in
the underlying lawsuit brought by three former STMC employees and a third
party.  By one cross-issue, STMC complains of the trial court=s allocation of defense costs.  We
affirm the judgment of the trial court in STMC=s favor as it pertains to Maryland=s duty to defend; we reverse the judgment of the trial court as it
pertains to the allocation of defense costs and render judgment for STMC for
all costs expended in defending the Bollom lawsuit.



I. Factual & Procedural Background












On June
8, 2000, STMC filed suit against Maryland and Trinity Universal Company (ATrinity@) for breach of contract.[2]  This suit
arose from an underlying lawsuit (the ABollom lawsuit@) brought against STMC for sexual discrimination, negligence,
intentional infliction of emotional distress, and invasion of privacy.[3] 
Maryland answered STMC=s suit,
asserting that the plaintiffs in the Bollom lawsuit did not allege
sufficient facts to trigger coverage under the policies issued to STMC by Maryland. 

On
February 20, 2001, STMC filed a motion for partial summary judgment.  STMC
alleged that the facts of the underlying suit triggered coverage under ACoverage B-Personal Injury,@ a clause contained in the policy issued
to STMC by Maryland, for false imprisonment and a violation of the right to
privacy. 












On March
23, 2001, Maryland filed a response to STMC=s motion for partial summary judgment
and a cross-motion for summary judgment, asserting that the Bollom lawsuit
did not allege sufficient facts to trigger coverage, thereby eliminating Maryland=s duty to defend STMC in the Bollom
lawsuit.  In conjunction with its response, Maryland filed a supplemental
cross-motion for summary judgment based upon the fortuity doctrine, in which it
asserted that the fortuity doctrine precludes coverage to STMC for the
underlying suit because the damages sustained by the plaintiffs in the
underlying suit were a known loss or a loss in progress.  Therefore, Maryland contended that it does not have a duty to defend STMC in the Bollom lawsuit
as a matter of law. 

On June
3, 2002, the trial court granted STMC=s motion for
partial summary judgment with respect to coverage for the false imprisonment
claim.[4]  The trial
court denied STMC=s motion for
partial summary judgment with respect to all other issues, including its claim
for coverage regarding the Bollom plaintiffs= invasion of privacy claim.  The
trial court also denied Maryland=s
cross-motion for summary judgment and its supplemental cross-motion for summary
judgment based upon the fortuity doctrine.












On
November 23, 2005, Maryland filed a motion to allocate defense costs with the
trial court.[5]  The trial
court granted Maryland=s motion to
allocate defense costs on December 20, 2005, and established the following
defense cost allocation:  Maryland is responsible for paying two-thirds of
the defense costs sustained by STMC; STMC shoulders the burden of one-third of
the defense costs.  The amounts were to be calculated after the total
defense costs were reduced by the amount of the settlement between STMC and
Trinity.

In
connection with the final judgment of the trial court, STMC and Maryland stipulated that STMC had incurred $245,370 in reasonable and necessary legal fees
and expenses in defending the underlying suit.[6]  On February
8, 2006, the trial court filed its final judgment.[7] 
On February 28, 2006, Maryland filed its initial notice of appeal, which it
later amended on March 2, 2006.[8]  STMC filed a
notice of cross-appeal on March 7, 2006.[9]












II. Standard of Review

The
function of summary judgment is to eliminate patently unmeritorious claims and
defenses, not to deprive litigants of the right to a trial by jury.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand,
776 S.W.2d 551, 556 (Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344
(Tex. App.BCorpus Christi 2003, no pet.).  We
review de novo a trial court=s grant or
denial of a traditional motion for summary judgment.  Creditwatch, Inc.
v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing Schneider Nat=l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz, 105 S.W.3d at 345. 












Under a
traditional motion for summary judgment, the movant must establish that no
material fact issue exists and that it is entitled to judgment as a matter of
law.  Tex. R. Civ. P.
166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz, 105 S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690
(Tex. App.BCorpus Christi 2002, pet. denied). 
After the movant produces evidence sufficient to show it is entitled to summary
judgment, the nonmovant must then present evidence raising a fact issue.  See
 Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  In deciding
whether there is a disputed material fact that precludes summary judgment,
evidence favorable to the non-movant will be taken as true.  Nixon v.
Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  Moreover,
every reasonable inference must be indulged in favor of the non-movant and any
doubts must also be resolved in its favor.  Id. at 549.  When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties= summary judgment evidence and determine
all questions presented.  See FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000); see also Warrantech Corp. v. Steadfast Ins.
Co., 210 S.W.3d 760, 765 (Tex. App.BFort Worth
2006, no pet.).  The reviewing court should render the judgment that the
trial court should have rendered.  See FM Props., 22 S.W.3d at 872;
see also Warrantech, at 765.

III. Analysis

In its
first and second issues, Maryland contends that the Bollom petition does
not allege facts which state a claim for either false imprisonment or invasion
of privacy.[10]  As such, Maryland contends that it does not owe STMC a duty to defend the Bollom lawsuit as a
matter of law.  The trial court=s judgment
specifically found a duty to defend based on the allegation of false
imprisonment, not invasion of privacy.





An insurer has the
following four options when faced with the dilemma of whether 












to defend or refuse
to defend a proffered claim:  A(1)
completely decline to assume the insured=s defense;
(2) seek a declaratory judgment as to its obligations and rights; (3) defend
under a reservation of rights or a non-waiver agreement; [or] (4) assume the
insured=s unqualified defense.@  E & L Chipping Co. v.
Hanover Ins. Co., 962 S.W.2d 272,  274 (Tex. App.BBeaumont 1998, no pet.) (citing Katerndahl
v. State Farm Fire & Cas. Co., 961 S.W.2d 518, 521 (Tex. App.BSan Antonio 1997, no pet.); Farmers Tex. County Mut. Ins. Co. v. Wilkinson, 601 S.W.2d 520, 522 (Tex. Civ. App.BAustin 1980, writ ref=d n.r.e.)).  An insurer=s duty to defend and duty to indemnify
are distinct and separate duties.  Id. (citing Trinity
Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997)).  An
insurer may have a duty to defend, but no duty to indemnify.  See Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam).  Therefore, the duty to defend is much broader than the duty
to indemnify.  See id.












Whether
an insurer owes its insured a duty to defend is determined by the pleadings in
the underlying lawsuit and the insurance policy, which is otherwise known as
the Aeight corners@ rule.  Scottsdale Ins. Co. v.
Travis, 68 S.W.3d 72, 75 (Tex. App.BDallas 2001,
pet. denied) (citing Nat=l
Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.
1997)).  In accordance with the Aeight corners@ rule, we must examine the factual
allegations in the underlying petition and the terms of the insurance policy to
determine if any portion of the suit states a cause of action potentially
covered by the policy, without regard to the truth or falsity of such
allegations.  GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006); Folsom Invs., Inc. v. Am. Motorists
Ins. Co., 26 S.W.3d 556, 558-59 (Tex. App.BDallas 2000, no pet.).  If coverage is found for any portion
of the underlying suit, the insurer must defend the entire suit.  Scottsdale
Ins. Co., 68 S.W.3d at 75 (citing St. Paul Ins. Co. v. Tex. Dep=t of Transp., 999 S.W.2d 881, 884 (Tex. App.BAustin 1999, pet. denied)).  The
insurer does not have a duty to defend if an insured, in its petition, alleges
only facts not covered or excluded by the policy.  Fid. & Guar.
Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788 (Tex. 1982); Folsom,
26 S.W.3d at 559.  We view the factual allegations in the petition
liberally, resolving any doubt in favor of the insured.  Scottsdale
Ins. Co., 68 S.W.3d at 75 (citing McCarthy Bros. Co. v. Cont=l Lloyds Ins. Co., 7 S.W.3d 725, 728 (Tex. App.BAustin 1999, no pet.)).

The
elements of false imprisonment are:  (1) a willful detention; (2)
performed without consent; and (3) without the authority of law.  See
Randall=s Food
Markets, Inc. v. Johnson,
891 S.W.2d 640, 644 (Tex. 1995); Wal-Mart Stores, Inc. v. Cockrell, 61
S.W.3d 774, 777 (Tex. App.BCorpus
Christi 2001, no pet.); see also Cuellar v. Walgreens Co., No.
13-00-594-CV, 2002 Tex. App. LEXIS 2293, at **6-7 (Tex. App.BCorpus Christi Mar. 28, 2002, no
pet.).  A willful detention may be accomplished by violence, by threats,
or by any other means restraining a person from moving from one place to
another.  See Randall=s, 891 S.W.2d at 644-45; see
also Cuellar, 2002 Tex. App. LEXIS 2293, at *7.  If the alleged
detention was performed with the authority of law, then no false imprisonment
occurred.  See Cockrell, 61 S.W.3d at 777 (citing Wal-Mart
Stores, Inc. v. Resendez, 962 S.W.2d 539, 540 (Tex. 1998)).  The
plaintiff must prove the absence of authority in order to establish the third
element of a false imprisonment cause of action.  Id.  An
employer has a common-law privilege to investigate reasonably credible
allegations regarding the dishonesty of its employees.  Randall=s, 891 S.W.2d at 644.












Where it
is alleged that a detention is effected by a threat, the plaintiff must
demonstrate that the threat was such as would inspire in the threatened person
a just fear of injury to her person, reputation, or property.  Fojtik
v. Charter Med. Corp., 985 S.W.2d 625, 629 (Tex. App.BCorpus Christi 1999, pet. denied). 
Threats to call the police are not usually enough to effect an unlawful
imprisonment.  Id. (citing Morales v. Lee, 668 S.W.2d 867,
869 (Tex. App.BSan Antonio
1984, no writ); W. Prosser, Torts ' 11 (4th ed. 1971)).  Moreover, a reviewing court may
consider such factors as relative age, size, sex, and the physical demeanor of
the participants in determining whether such threats are enough to overcome the
plaintiff=s free will.  See Fojtik,
985  S.W.2d at 629; see also Cuellar, 2002 Tex. App. LEXIS 2293, at
*8.





In reviewing the
false imprisonment claims contained in the Bollom petition, we must 












look solely at the
insurance policies issued to STMC by Maryland and the pleadings in the Bollom
lawsuit.  See Scottsdale Ins. Co., 68 S.W.3d at 75 (citing
Nat=l Union Fire Ins. Co., 939 S.W.2d at 141).  In reviewing
the plaintiff=s pleadings
in light of the policy provisions, we must focus on the facts alleged, not on
the legal theories.  Nat=l
Union Fire Ins. Co.,
939 S.W.2d at 142; Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co., 25
S.W.3d 900, 903 (Tex. App.BHouston [1st
Dist.] 2000, no pet.) (op. on reh=g).  AIt is not the cause of action alleged
that determines coverage, but the facts giving rise to the alleged
actionable conduct.@  Nat=l Union Fire Ins. Co., 939 S.W.2d at 141 (emphasis in
original).[11]  If the
plaintiff=s petition does not allege facts within
the scope of the policy=s coverage,
an insurer is not legally required to provide a defense.  Cowan,
945 S.W.2d at 821; Nat=l
Union Fire Ins. Co.,
939 S.W.2d at 141; McManus, 633 S.W.2d at 788.  Based upon the
allegations in the Bollom petition, the elements for a claim of false imprisonment
are satisfied.  

The
petition provides that Bollom, among others, was willfully detained by William
C. Yankowsky, M.D.,  to engage in unwanted Aclosed door@ hypnosis
sessions while on the job.[12]  Moreover,
Dr. Yankowsky=s use of an
alyce clamp prevented Bollom from leaving the room and subsequently terminating
the hypnosis session.  In addition, the use of the alyce clamp left a
permanent scar on Bollom=s right arm.[13] 
Bollom alleged that she consented to the hypnosis sessions solely because she feared
Dr. Yankowsky and feared losing her job.[14]  According
to the Bollom petition, Dr. Yankowsky routinely intimidated and
belittled Bollom when she refused to participate in these sessions.  As a
result of the bullying and the hypnosis sessions, Bollom alleged she sustained
a deterioration in her mental health.  It is clear that Dr. Yankowsky=s actions engendered Bollom=s justified fear of injury to her
person, reputation, or property.  See Fojtik, 985 S.W.2d at
629.  












Furthermore,
Dr. Yankowsky was Bollom=s Adirect boss.@  The hierarchical positioning of
the participants and Dr. Yankowsky=s alleged
intimidating acts set out in the petition support a determination that Bollom=s free will was overcome.  See
id.; see also Cuellar, 2002 Tex. App. LEXIS 2293, at *8. 
Nothing in the petition reflects that Dr. Yankowsky was authorized to detain
Bollom to investigate dishonesty or for any other justification authorized by
law.  See Randall=s, 891 S.W.2d at 644; Fojtik, 985
S.W.2d at 629.  We, therefore, find that the Bollom petition
alleges facts giving rise to a false imprisonment claim.  

It is
undisputed that claims for false imprisonment were within the scope of coverage
afforded by the Maryland-issued insurance policies.  Because a claim for
false imprisonment was properly alleged, Maryland was required to provide STMC
with a full defense for the entire Bollom lawsuit.  See
Scottsdale Ins. Co., 68 S.W.3d at 75; St. Paul Ins. Co., 999 S.W.2d
at 884.  Therefore, having found Maryland was required to defend the
entire Bollum lawsuit based upon the false imprisonment claim, we need
not address Maryland=s second
issue pertaining to invasion of privacy.  See Tex. R. App. P. 47.1. 
Accordingly, we overrule Maryland=s first and
second issues.    

IV. The Fortuity Doctrine

In its
third issue, Maryland contends that the trial court erred in holding that it
had a duty to defend because coverage for the alleged offenses is precluded
pursuant to the fortuity doctrine.  STMC counters by arguing that Maryland has failed to establish, as a matter of law, that prior to 1986, STMC actually
knew or should have known of an ongoing loss.  As such, STMC argues that
the fortuity doctrine precludes neither coverage nor Maryland=s duty to defend the underlying Bollom
lawsuit.












Generally,
fortuity is an inherent requirement of all risk insurance policies.  Two
Pesos v. Gulf Ins. Co., 901 S.W.2d 495, 501 (Tex. App.BHouston [14th Dist.] 1995, no writ); Miles
v. Royal Indem. Co., 589 S.W.2d 725, 729 (Tex. Civ. App.BCorpus Christi 1979, writ ref'd n.r.e.);
Brownsville Fabrics, Inc. v. Gulf Ins. Co., 550 S.W.2d 332, 336‑37
(Tex. Civ. App.BCorpus
Christi 1977, writ ref'd n.r.e.).  As the Fourteenth Court of Appeals has
noted, "[t]he concept of insurance is that the parties, in effect, wager
against the occurrence or non‑occurrence of a specified event; the
carrier insures against a risk, not a certainty."  Two Pesos,
901 S.W.2d at 501 (quoting Bartholomew v. Appalachian Ins. Co., 655 F.2d
27, 29 (1st Cir. 1981)).  












The
fortuity doctrine incorporates the "known loss" and "loss in
progress" principles.  Id.  These aspects of the
fortuity doctrine focus on the proposition that insurance coverage is precluded
where the insured is, or should be, aware of an ongoing progressive loss or
known loss at the time the policy is purchased.  Id. (citing Inland
Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co., 997 F.2d 172,
175‑77 (6th Cir. 1993)); see Certain Underwriters at Lloyd=s v. KKM Inc., 215 S.W.3d 486, 495 (Tex. App.BCorpus Christi 2006, no pet.).  A
"known loss" is a loss the insured knew had occurred prior to making
the insurance contract.  See Burch v. Commonwealth Mut. Ins. Co.,
450 S.W.2d 838, 840‑41 (Tex. 1970); Scottsdale Ins. Co., 68 S.W.3d
at 75.  A "loss in progress" occurs when the insured is, or
should be, aware of an ongoing progressive loss at the time the policy is
purchased.  Scottsdale Ins. Co., 68 S.W.3d at 75.  AThe [fortuity] doctrine has its roots in
the prevention of fraud; because insurance policies are designed to insure
against fortuities, fraud occurs when a policy is misused to insure a
certainty.@  Id.  In reviewing the
applicability of the fortuity doctrine, we are bound by the Aeight corners@ rule.  Warrantech, 210
S.W.3d at 767-68; Burlington Ins. Co. v. Tex. Krishnas, Inc., 143 S.W.3d
226, 230-31 (Tex. App.BEastland
2004, no pet.); E & L Chipping Co., 962 S.W.2d at 276. 
Therefore, we must review solely the Bollom petition and the insurance policies
issued to STMC by Maryland.  See Scottsdale Ins. Co., 68
S.W.3d at 75 (citing Nat=l
Union Fire Ins. Co.,
939 S.W.2d at 141).  According to the first amended petition in the Bollom
lawsuit, Dr. Yankowsky began forcing Bollom and others to participate in the Aclosed door@ hypnosis sessions in 1985. 
However, the petition does not conclusively establish that STMC was aware of
Dr. Yankowsky=s alleged
wrongful conduct in 1986, when STMC first purchased an insurance policy from Maryland.  It is unclear as to Dr. Yankowsky=s role in
purchasing  the insurance policies from Maryland.  In addition, we
are not provided with a date reflecting when Bollum first began complaining
about the alleged wrongful conduct of Dr. Yankowsky, thus putting STMC on
notice of the alleged wrongful conduct.  Therefore, Maryland cannot
conclusively establish, based solely on the Bollum petition, that STMC
sought to insure a known or ongoing loss as a matter of law.  See Burch,
450 S.W.2d at 840‑41; Scottsdale Ins. Co., 68 S.W.3d at 75; see
also Warrantech, 210 S.W.3d at 768 (AApplication
of the fortuity doctrine does not hinge on whether the insured knew a
particular act was wrongful.  Rather, it hinges on whether the insured
knew before the inception of the coverage that an actBknowingly wrongful or otherwiseBresulted in a loss.@).[15]  












In
looking at the Aeight corners@ of the insurance policy and the
underlying pleadings, it is apparent that the facts pleaded are within the
scope of the policy period.  See E & L Chipping Co., 962 S.W.2d
at 275; see also GuideOne Elite Ins. Co., 197 S.W.3d at 307, 310-11
(concluding that an insurer has a duty to defend even though alleged sexual
misconduct by a church employee occurred from 1992 to 1994 and the insurance
policy had an effective date of March 31, 1993).  We, therefore, conclude
that the fortuity doctrine does not preclude STMC=s entitlement to a full defense from Maryland.  Accordingly,
we overrule Maryland=s third
issue.

V. Allocation of Defense Costs












In its
response to Maryland=s motion to
allocate defense costs and on appeal, STMC argues that because Maryland has a
duty to defend the underlying Bollom lawsuit, Maryland must pay for a
full defense, not a pro rata or partial defense.  STMC further argues that
the language of the policies does not provide a basis for a prorated allocation
of defense costs.  Conversely, Maryland asserts that there is a
distinction between the duty to defend and the duty to pay defense costs,
which, in combination with notions of fairness and the insurance policy
language itself, permits the insurance company to pay defense costs for solely Atime on the risk.@[16]  Maryland contends that the
allocation of defense costs between an insurer and its insured is a matter of
first impression in Texas and that we should follow the reasoning in  Ins.
Co. of N. Am. v. Forty-Eight Insulations, Inc., 451 F. Supp. 1230, 1243
(E.D. Mich. 1978), aff=d, 633 F.2d 1212 (6th Cir. 1980), aff=d on reh=g, 657 F.2d 814 (6th Cir.) (holding that
defense costs must be borne proportionally among the insurers according to the
period of time that they insured against the risk, thus favoring pro rata
liability for defense costs over joint and several liability for a full
defense). 

This
issue is not a matter of first impression in Texas.  In fact, the Austin
Court of Appeals has held that Aunder Texas law, an insurer=s duty to defend its insured on a claim
occurring partially within and partially outside of the policy period is not
reduced pro rata by the insurer=s >time on the risk= or by any other formula.@  Tex. Prop. & Cas. Ins. Guar.
Ass=n v. Sw. Aggregates, Inc., 982 S.W.2d 600, 607 (Tex. App.BAustin 1998, no pet.).  The court
noted that Athe insurer=s duty is to provide its insured with a
complete defense . . . not to provide a pro rata defense.@  Id. (citing CNA Lloyds
of Tex. v. St. Paul Ins. Co., 902 S.W.2d 657, 661 (Tex. App.BAustin 1995, writ dism=d by agr.)).  












The Sw.
Aggregates court further noted a split in the federal courts regarding the
pro rata allocation of defense costs.  Id.; see Forty-Eight
Insulations, 633 F.2d at 1224-25; Keene Corp. v. Ins. Co. of N. Am.,
667 F.2d 1034, 1048-50 (D.C. Cir. 1981) (holding that once coverage under an insurance
policy is triggered, an insurer is liable up to the policy limits, subject to Aother insurance@ clauses, and, therefore, each insurer
is fully liable for all defense costs).  The Texas Supreme Court has
adopted the Keene approach regarding the allocation of defense
costs.  Sw. Aggregates, 982 S.W.2d at 605 (citing Am. Physicians
Ins. Exch. v. Garcia, 876 S.W.2d 842, 854-55 (Tex. 1994)).[17] 
Therefore, Texas law does not require a pro rata allocation of defense
costs.  See id.  

Despite
the Texas Supreme Court=s implicit
rejection of the Forty-Eight Insulations standard, Maryland contends
that the interests of fairness and the factual scenario in the instant case
necessitates the imposition of the Forty-Eight Insulations standard. 
In particular, Maryland argues that STMC should be treated as an insurer for
the time in which it was uninsured, like the appellee, Forty-Eight Insulations,
Inc., was treated in Forty-Eight Insulations.  As such, Maryland attempts to categorize both STMC and itself as insurers, thus aiding in the
apportionment of defense costs.  However, Maryland=s argument fails because it is premised
on the reasoning advanced in Forty-Eight Insulations, which the Texas
Supreme Court has declined to follow.  See Garcia, 876 S.W.2d at
854-55; see also Sw. Aggregates, 982 S.W.2d at 605. 












Maryland further contends that it is only
required to pay defense costs Ato which this
insurance applies,@ Ato which this coverage part applies,@ or Aduring the policy period.@ 
Therefore, Maryland asserts that it is only liable for its prorated share of
the defense costs because some of the claims allegedly arose outside of the
coverage period.  Essentially, Maryland argues that it should only be
liable for its Atime on the
risk.@  However, Maryland is required to
provide a full defense to STMC in the event that insurance policy provisions
are triggered, as we have already determined, regardless of whether the claim
occurs partially outside of the policy.  See Sw. Aggregates, 982
S.W.2d at 607; see also CNA Lloyds, 902 S.W.2d at 661.  In
addition, several Texas courts have rejected the Atime on the risk@ approach
advanced by Maryland.  See Sw. Aggregates, 982 S.W.2d at 607;
see also CNA Lloyds, 902 S.W.2d at 661.  The key inquiry is whether a claim
arose during the policy period, which this Court and the trial court have
confirmed.  See Sw. Aggregates, 982 S.W.2d at 607.  Moreover,
we are unable to find, nor has Maryland directed us to, language in the
insurance policies that specifically refers to a pro rata allocation of the
defense costs.  The insurance policies do not provide textual support for Maryland=s assertion that it should only be
liable for a prorated share of the defense costs.  As such, we conclude
that STMC is entitled to a full defense; therefore, Maryland should be
responsible for all defense costs incurred in defending the Bollom
lawsuit.  Accordingly, STMC=s sole issue
in its cross-appeal is sustained.  

VI. Conclusion

Based on
the foregoing, we affirm the judgment of the trial court as it pertains to Maryland=s duty to defend.  However, we
reverse the judgment of the trial court as it pertains to the allocation of
defense costs and render judgment for STMC for all costs expended in
defending the Bollom lawsuit.





              
                                                                                                                                                                       __________________________    






DORI CONTRERAS GARZA,

Justice

 

Memorandum Opinion delivered and 

filed this the 10th day of January, 2008.

 











[1] South Texas Medical Clinics, P.A.
(ASTMC@) is a multi-specialty clinic with five satellite
locations for patients in Wharton, Matagorda, Fort Bend, Jackson, Colorado, and Brazoria counties.  This appeal involves the STMC clinic in Wharton, Texas, which presently employs forty-three doctors.  The record does not
reflect the number of doctors STMC employed at any given time from 1985 to
1994, the pertinent time frame in this appeal.





[2] Trinity Universal Company (ATrinity@) insured STMC from November 14,
1993 to November 14, 1994.  The record reflects that Trinity also refused
to defend STMC in the underlying suit.  However, on December 27, 2005,
STMC announced a settlement with Trinity and moved to dismiss all causes of
action against Trinity with prejudice.  On January 6, 2006, the trial
court granted STMC=s motion to dismiss all causes of
action against Trinity with prejudice.  Accordingly, Trinity is not a
party to this appeal.  





[3] The underlying suit was brought by
Jeanette Bollom, Nancy Ondrias, Donna Henderson, former STMC employees, and
Jeanette Bollom=s husband, Charles Bollom, a
non-STMC employee, against Dr. William C. Yankowsky, President and Chief
Surgeon at STMC, involving alleged forced Aclosed door@ hypnosis sessions that transpired for a period of nine years. 
The record reflects that STMC expended its own resources to defend the lawsuit
and eventually settled with the plaintiffs in the Bollom lawsuit for
$163,700. 





[4] The trial court=s order granting STMC=s motion for partial summary
judgment with respect to coverage for the Bollom plaintiffs= false imprisonment claim was
incorporated into the trial court=s final judgment.





[5] In its motion to allocate defense costs, Maryland asserted that the
trial court should only award STMC two-thirds of its costs sustained in
defending the underlying suit based on a reduction of the total defense costs
by the amount of the settlement between STMC and Trinity, considering Maryland
only insured STMC for six of the nine years at issue in the underlying suit. 
The record contains the
following chart, which illustrates the insurance policies and the corresponding
coverage periods at issue on appeal:

 


 
 
  
 Carrier Name
 
 
  
 Policy Number
 
 
  
 Coverage Period
 
 
 
 
  
 Maryland Casualty
 
 
  
 TMP 49190955
 
 
  
 11/14/1986-11/14/1987
 
 
 
 
  
 Maryland Casualty
 
 
  
 EPA 03640787
 
 
  
 11/14/1988-11/14/1989
 
 
 
 
  
 National Standard
 
 
  
 EPA 07958326
 
 
  
 11/14/1990-11/14/1991
 
 
 
 
  
 Maryland Lloyds
 
 
  
 EPA 07958326
 
 
  
 11/14/1991-11/14/1992
 
 
 
 
  
 Maryland Lloyds
 
 
  
 EPA 07958326
 
 
  
 11/14/1992-11/14/1993
 
 
 
 
  
 Maryland Lloyds
 
 
  
 EPA 07958326
 
 
  
 11/14/1993-11/14/1994         
 
 


 





[6] In its final judgment, the trial
court explicitly referred to its December 20, 2005 order allocating one-third of
the defense costs to STMC and the remaining two-thirds of the defense costs to Maryland.  The trial court=s final judgment also specifically
referred to the parties= stipulation that STMC incurred
$245,370 in defense costs Ain the underlying Bollom lawsuit less the Trinity settlement
credit.@ 





[7] In its final judgment, the trial
court awarded $283,564.50 in damages to STMC from Maryland, which was broken
down as follows:

 

A.         $163,580.00
for defense costs incurred by STMC in the underlying Bollom lawsuit;

B.         $44,984.50
in prejudgment interest on that sum at the annual rate of 5.0% for 5.5 years;

C.         $75,000.00
in attorneys [sic] fees incurred by STMC in connection with the prosecution of
this suit for duty to defend.

 

. . . .

 

IT IS FURTHER ORDERED THAT the Maryland
Casualty Defendants shall pay STMC the following appellate costs if and only if
STMC prevails on appeal:

 

$15,000 for an appeal to the Court
of Appeals; and

$15,000 for an appeal
to the Texas Supreme Court.





[8] In its amended notice of appeal, Maryland appeals the trial court=s denial of its motion for summary
judgment and its supplemental cross-motion for summary judgment entered on June
3, 2002, and the trial court=s final judgment entered on February 8, 2006.  We note that under
the final judgment rule, there is no appeal from a judgment denying a motion
for summary judgment.  Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 625 (Tex. 1996) (citing Novak v. Stevens, 596 S.W.2d 848,
849 (Tex. 1980)); Baylor Coll. of Med. v. Tate, 77 S.W.3d 467, 469 (Tex.
App.BHouston [1st Dist.] 2002, no
pet.).  

 

The trial court, in its final
judgment, notes ASTMC has non-suited with prejudice
its claims against the Maryland Casualty Defendants for breach of the duty to
indemnify.@  The trial court further
notes, in its final judgment, that AThe Court considering the Stipulation, the Summary Judgment
Order, the Allocation Order, and all pleadings on file, enters this Final
Judgment which fully resolves all claims and causes of action in this suit.@  Therefore, this action is
final and appealable.  See In re Burlington Coat Factory, 167
S.W.3d 827, 830 (Tex. 2005) (holding that when the trial court resolves some
claims by summary disposition, leaving other claims unresolved, the judgment is
final if it unequivocally states it finally disposes of all claims); Ritzell
v. Espeche, 87 S.W.3d 536, 538 (Tex. 2002) (same); Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 200 (Tex. 2001) (same).  

 

Because both parties
filed motions for summary judgment, we will determine all questions
presented.  Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex.
2002); Novak, 596 S.W.2d at 849 (ABut when . . . both parties file motions for summary
judgment and one such motion is granted, then the trial court=s judgment becomes final and
appealable, and on appeal the Court of Civil Appeals should determine all
questions presented.@). 





[9] In its notice of cross-appeal,
STMC takes issue with the trial court=s order to allocate defense costs entered on December 21,
2005, which is incorporated into the trial court=s final judgment entered on February 8, 2006.





[10] The trial court denied STMC=s motion for summary judgment as it
pertained to its claim for invasion of privacy.  This claim is appealable
because the trial court, in its final judgment, noted that AThe Court considering the
Stipulation, the Summary Judgment Order, the Allocation Order, and all
pleadings on file, enters this Final Judgment which fully resolves all claims
and causes of action in this suit.@  See In re Burlington Coat Factory, 167 S.W.3d
at 830; Ritzell, 87 S.W.3d at 538; Lehmann, 39 S.W.3d at
200.  Moreover, the parties do not dispute this issue.  

 





[11] The Bollom petition does
not contain a claim for false imprisonment.  However, we must determine if
the facts alleged in the Bollom petition give rise to any claim
triggering Maryland=s duty to defend under the
corresponding Maryland-issued insurance policies without regard to the legal
theories proposed.  See Nat=l Union Fire Ins. Co. v. Merchants Fast
Motor Lines, Inc.,
939 S.W.2d 139, 142 (Tex. 1997); Saint Paul Surplus Lines Ins. Co. v. Geo
Pipe Co., 25 S.W.3d 900, 903 (Tex. App.BHouston [1st Dist.] 2000, no pet.) (op. on reh=g).





[12] Maryland contends that there are no factual
allegations in the Bollom petition demonstrating that Dr. Yankowsky
willfully detained Bollom or any of the other plaintiffs in the underlying
lawsuit as a matter of law.  However, the use of the alyce clamp, Dr.
Yankowsky=s intimidating acts, and the fact
that the sessions were conducted with the door closed is enough to demonstrate
that Dr. Yankowsky intentionally detained Bollom and the other plaintiffs in
the underlying lawsuit to engage in hypnosis sessions.  See Randall=s Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); see
also Cuellar v. Walgreens Co., No. 13-00-594-CV, 2002 Tex. App. LEXIS 2293,
at *7 (Tex. App.BCorpus Christi Mar. 28, 2002, no
pet.).





[13] We are unable to retrieve a
precise definition for the alyce clamp used by Dr. Yankowsky.  However, a
clamp is defined as Aany of various instruments or
appliances having parts brought together for holding or compressing something .
. . .@  Merriam-Webster: Medline
Plus Online Medical Dictionary, available at http://www2.merriam‑webster.com/cgi‑bin/mwmednlm?book=Medical&va=clamp
(last visited Nov. 19, 2007).





[14] We only address the false
imprisonment claims pertaining to Jeanette Bollom because the petition lacks
specificity as to the other plaintiffs in the lawsuit.





[15] In support of its fortuity doctrine argument, Maryland relies heavily
on the holdings in Two Pesos, Inc. v. Gulf Insurance Co., 901 S.W.2d
498, 501-02 (Tex. App.BHouston [14th Dist.] 1995, no writ)
and Scottsdale Insurance Co. v. Travis, 68 S.W.3d 72, 76-77 (Tex.
App.BDallas 2001, pet. denied). 
Both cases are readily distinguishable from the instant case.  

 

In Two Pesos, the appellate
court held that Taco Cabana=s motion for supplemental damages Adid not allege an offense occurring during Gulf=s [the insurance company] policy
period, and that coverage for Two Pesos= continued trade dress infringement is precluded because
the claim constitutes a known loss or loss in progress.@  See 901 S.W.2d at
498, 502.  Moreover, the Two Pesos court noted that Athe risk of liability was no longer
unknown because the injuries resulted when Two Pesos first copied Taco Cabana=s trade dress.  The risk of
injury from continued infringement was readily apparent, or should have been.@  Id.  Clearly,
the actors in Two Pesos engaged in intentional behaviorCinfringing on Taco Cabana=s trade dressCeven after the trial court issued a
judgment against Two Pesos for trade dress infringement.  Moreover, Two
Pesos, based on the knowledge that its actions subjected it to liability
(loss), actively sought to insure the known loss.  Id.  Here,
the Bollom petition does not conclusively establish that STMC was aware
of intentional conduct giving rise to liability and actively sought to insure a
known loss.

 

In Scottsdale
Insurance Co., the appellate court applied the fortuity doctrine to
preclude coverage on the basis that all of the allegations alleged in the
underlying petition arose before the inception of the insurance policy, and
even before the named insured was formed as a corporation.  68 S.W.3d at
76-77.  Clearly, there was no possibility of coverage because none of the
allegations in the underlying petition fell within the coverage period.  Id.  In the instant case, the majority of the wrongful conduct occurred within
the coverage period, and, as previously stated, the Bollom petition does
not conclusively establish that STMC actively sought to insure a known loss.





[16] ATime on the risk@ has been defined as an insurer=s Ashare of the total time period over which injury is
claimed.@  See Tex. Prop. & Cas.
Ins. Guar. Ass=n v. Sw. Aggregates, Inc., 982 S.W.2d 600, 607 (Tex. App.BAustin 1998, no pet.).  In the
instant case, Maryland contends that it should pay only two-thirds of the
defense costs because its  Atime on the risk@ is six years of the nine years of wrongful conduct alleged
in the Bollom petition.  See id.





[17] By adopting the Keene
approach to allocating defense costs, the Texas Supreme Court implicitly
rejected the approach advanced in Forty-Eight Insulations.  See
Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 854-55 (Tex. 1994).