**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2009

No. 09-20112

Charles R. Fulbruge III
Clerk

COOPER INDUSTRIES LLC; COOPER B-LINE, INC

Plaintiffs - Appellants

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-01082

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:[*]

This is a coverage dispute between insured Cooper Industries ("Cooper") and its insurance company American International Specialty Lines Insurance Co. ("AISLIC") over claims arising from the deaths of two employees of Cooper B-Line ("B-Line"), a wholly owned subsidiary of Cooper. The underlying lawsuit settled and the insured now appeals the district court's allocation of the settlement between them.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Two B-Line employees, Maurice Vickers and James Canady, were killed in an accident at B-Line's Sherman, Texas, facility. Vickers's wife, daughter and son, and Canady's parents, all sued B-Line and Cooper. The parties settled their claims for $4.95 million with an agreement that allocated the settlement payment among plaintiffs as follows: Mia and Maria Vickers (Vickers's wife and daughter) received $3.6 million; Kevin Davis (Vickers's son) received $825,000, and the Canady plaintiffs received $525,000. As a condition of the settlement, AISLIC required that at least $3.6 million be allocated to Mia and Maria Vickers, to which Cooper agreed, but otherwise the plaintiffs allocated the proceeds among themselves according to an agreement among only the plaintiffs. The settlement agreement did not contain an allocation of liability between Cooper and B-Line. At the time, Cooper paid a $1 million deductible and AISLIC paid $2.6 million, the additional amount AISLIC attributed to B-Line's liability. The parties disputed the responsibility for the remaining $1.35 million, which AISLIC attributed to Cooper but for which Cooper never accepted liability. Cooper originally believed that its AISLIC employer liability policy covered Cooper and that therefore AISLIC was responsible for the entire remainder. To reach a final settlement with the plaintiffs, each party paid half of that remainder.

In an earlier appeal we found that Cooper was not entitled to coverage from its AISLIC employer liability policy for the Vickers' and Canadys' claims. *Cooper Indus., L.L.C. v. Am. Int'l Specialty Lines Ins. Co.*, 273 F. App'x 297 (5th Cir. 2008). After affirming the district court's prior ruling that the policy did not cover Cooper's liability, we remanded for an allocation of the $1.35 million based on a determination of how much of the settlement should be attributed to B-Line's potential liability and how much to Cooper's.

2

II.

On remand, the district court allocated 100% of the disputed settlement amount to Cooper as a matter of law. The court based its allocation on the settlement agreement itself and applicable Texas law that limited the amount of B-Line's possible liability to each plaintiff.

Texas law limited the parties' potential liability in two ways. First, none of the plaintiffs could recover actual damages from B-Line because B-Line's workers' compensation insurance was their exclusive remedy for their negligence claims. The exception to the exclusive remedy under the Texas Labor Code is for surviving spouses or "heirs of the body," who can recover punitive damages for deaths caused by an employer's intentional act or gross negligence. TEX. LAB. CODE ANN. § 408.001(b). Under Texas law, "heirs of the body" do not include parents. *See, e.g., Galvan v. Public Utils. Bd.*, 778 S.W.2d 580, 584 (Tex. App.–Corpus Christi 1989). Canady's parents' claims against B-Line were therefore foreclosed by Texas law and the Canadys only could have recovered from Cooper, so the court allocated the $525,000 they received to Cooper.

Second, the Vickers' claims were limited by a state law cap on punitive damages. As the decedent's spouse and children, Mia and Maria Vickers would have been able to recover punitive damages from his employer, B-Line.[1] The amount they could recover was limited, however, by Texas's cap on punitive damages, which is calculated based on a formula that includes the amount of economic and noneconomic damages incurred by the plaintiffs. TEX. CIV. PRAC. & REM. CODE § 41.008(b). The district court found that although Texas law was unclear, the proper calculation of the punitive damages cap for the Vickers

---

[1] There was some dispute as to whether Vickers's son, Davis, would actually have been able to recover because the parent-child relationship between them had been severed by a prior court order. This likely would have reduced, and possibly eliminated, the likelihood of Davis recovering from B-Line.

plaintiffs should not include the Canadys' economic damages. The court calculated the applicable cap to be $3,601,362. It therefore allocated the $3.6 million received by Mia and Maria Vickers to AISLIC and the remainder to Cooper. This allocation meant that Cooper was responsible for the entire disputed $1.35 million.

## III.

We review a district court's legal decisions *de novo*. *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000).

In Texas, insurance settlement amounts are allocated based on the "concurrent causes" doctrine. *See Comsys Info. Tech. Servs., Inc. v. Twin*, 130 S.W.3d 181, 198 (Tex. App.–Houston 2003). When covered and noncovered causes combine to create a harm, the insurer is liable only for the portion of the loss caused solely by the covered cause and the insured bears the burden of showing that a loss is covered. *Id.*

A district court may determine the proper apportionment of a settlement as a matter of law by looking to the settlement agreement and by examining the allegations in the underlying suit and the coverage of the insurance contract. *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1494 (5th Cir. 1992). If the district court cannot determine the allocation of liability as a matter of law, it must hold a trial to apportion responsibility between the covered and noncovered causes of the harm. *Id.* The goal is to avoid fully retrying the plaintiffs' underlying claims; instead, the court must "determine what portion of the settlement *was reasonably intended* to concern claims covered by the policy at issue." *American Int'l Specialty Lines Ins. Co. v. Res-Care*, 529 F.3d 649, 657 (5th Cir. 2008) (emphasis added).

AISLIC argues that the district court properly decided the apportionment question as a matter of law based on the settlement agreement and the statutory limits on each plaintiff's possible recovery. On the other hand, Cooper argues

that the apportionment issue should have been a jury question as to what the parties intended at the time of settlement. In support of its argument, Cooper presented evidence that at the time of settlement, Cooper and B-Line believed that a court might calculate the punitive damages cap (and therefore B-Line's maximum liability) to be $5.1 million instead of $3.6 million and that B-Line's risk of liability was significantly greater than Cooper's. They point out that the settlement agreement did not allocate responsibility between Cooper and B-Line and only allocated the settlement proceeds among the plaintiffs.

Although it is a close call as to whether this issue was more properly decided as a matter of law or by a jury, we are nevertheless satisfied that the district court did not err in apportioning the settlement as it did. It is undisputed that AISLIC's view at the time of settlement was that B-Line was only responsible for $3.6 million. The court's determination that B-Line's punitive damages cap was $3.6 million means that AISLIC had all along correctly estimated the extent of B-Line's responsibility. The mere fact that Cooper and B-Line may have overestimated their possible liability, especially given that they apparently believed at the time that AISLIC would be responsible for the entire settlement, does not convince us that the apportionment issue thus became a jury question.

This appeal comes to us as a well-vetted matter. After studying the briefs, reviewing the record, and hearing arguments from the parties, we are convinced that the district court properly concluded as a matter of law that AISLIC's intended allocation of the settlement was correct. We are further convinced that even if this case had presented a jury question, the resulting apportionment would, most likely, have been no different. Given the time, the tedious work and the careful analysis that the district court invested in arriving at the proper apportionment, we are satisfied that this long and thoroughly litigated dispute has been brought to a legally sound final conclusion.

IV.

For the reasons stated above, the judgment of the district court is

AFFIRMED.