# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2021

Lyle W. Cayce
Clerk

No. 20-11113

Great American Insurance Company,

*Plaintiff—Appellant*,

*versus*

Employers Mutual Casualty Company; Corona
Management Ventures, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-1819

Before King, Smith, and Haynes, *Circuit Judges*.

Haynes, *Circuit Judge*:

Great American Insurance Company and Employers Mutual Casualty Company, two umbrella policy providers, dispute their respective obligations to contribute to a $7 million settlement of a wrongful death suit arising out of a motor-vehicle accident. Great American filed suit against Employers Mutual, seeking a declaratory judgment regarding priority of coverage and damages for breach of contract. Both parties moved for summary judgment. The district court assumed without deciding that the Employers Mutual policy (the "EMC Umbrella Policy") was required to provide coverage

No. 20-11113

before the Great American policy (the "Great American Umbrella Policy"). However, the district court granted summary judgment in favor of Employers Mutual, concluding that Great American failed to allocate damages between covered and non-covered claims.

We conclude that the district court was correct in its assumption that the EMC Umbrella Policy had priority of coverage; however, the district court erred in granting summary judgment for Employers Mutual because Great American's evidence created a factual dispute on allocation. Accordingly, we REVERSE the summary judgment and REMAND for proceedings consistent with this opinion.

## I.    Background

The underlying liability lawsuit arose from an automobile accident. Gerald Decker, an employee of Corona Management Ventures, LLC ("Corona") was driving a tractor-trailer while performing tire collection services for Liberty Tire Recycling, LLC ("Liberty Tire"). Decker lost control of the tractor-trailer and collided with two vehicles driven by Tammy Hill and Leslie Stalder (the "Underlying Plaintiffs"). Ms. Hill died as a result of the accident, and Ms. Stalder sustained serious personal injuries. The Underlying Plaintiffs filed lawsuits against Liberty Tire, Corona, and Decker. These suits asserted that (1) Decker was negligent; (2) Liberty Tire was negligent; (3) Corona was vicariously liable for Decker's negligence; and (4) Liberty Tire was vicariously liable for Decker and Corona's negligence. After extensive litigation, the parties settled all claims via a $7 million Settlement Agreement (the "Settlement Agreement"). Great American and Employers Mutual reserved their respective rights with respect to liability for the settlement and agreed to resolve the coverage dispute via a declaratory judgment action.

No. 20-11113

During the relevant timeframe, Liberty Tire and Corona were covered by several relevant insurance policies:

- Employers Mutual insured Corona via a primary commercial auto policy with a $1 million policy limit (the "EMC Primary Policy").

- Employers Mutual insured Corona via a secondary commercial umbrella policy, the EMC Umbrella Policy, with a $1 million policy limit. The EMC Umbrella Policy covered all "insured," defined in the policy as "[a]nyone liable for the conduct of an insured . . . , but only to the extent of that liability."

- Liberty Mutual Insurance Company ("Liberty Mutual") insured Liberty Tire via a primary commercial auto policy with a $2 million policy limit (the "Liberty Mutual Primary Policy").

- Great American insured Liberty Tire via a commercial umbrella policy, the Great American Umbrella Policy, with a $30 million policy limit.

The EMC Primary Policy and the Liberty Mutual Primary Policy covered the first $2,668,537.90 of the Settlement Agreement without debate. However, Great American and Employers Mutual disputed their respective liability for the remaining $4,331,462.10. In order to end the Underlying Lawsuit, Great American paid the remaining balance and filed suit against Employers Mutual, seeking (1) a declaratory judgment regarding the priority of coverage between the umbrella policies and (2) damages[1] for Employers

---

[1] Great American requested the $1 million policy limit for the coverage provided under EMC's Umbrella Policy.

No. 20-11113

Mutual's breach of its umbrella policy for refusing to fund the underlying settlement.

Both parties moved for summary judgment. The district court granted Employers Mutual's motion, denied Great American's motion, and dismissed Great American's remaining claims. Great American timely appealed.

## II.  Jurisdiction & Standard of Review

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo, viewing all admissible evidence "in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) (quotation omitted). A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.  Discussion

### A. Priority of Coverage

Using Texas law,[2] we first consider which umbrella policy had priority of coverage. The district court did not decide the issue but assumed that the coverage provided by the EMC Umbrella Policy applied before the coverage provided by the Great American Umbrella Policy. Because the Great

---

[2] Neither party disputes that Texas law applies to the interpretation of the relevant policies.

American Umbrella Policy was excess to the EMC Umbrella Policy, we now conclude the same.

Under Texas law, insurance policies are construed in accordance with the general rules of interpretation and construction that apply to contracts generally. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). The primary goal in policy interpretation is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). Accordingly, a court should interpret an insurance policy in a way which (1) "confers meaning to all its terms"; (2) "harmonize[s] and give[s] effect to all of the provisions"; and (3) avoids rendering parts of the policy inoperative or "meaningless." *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (quotation omitted); *see also Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 372 (5th Cir. 2011); *Balandran*, 927 S.W.2d 738, 740–41 (Tex. 1998). No singular provision is "given controlling effect"; instead, all provisions are "considered with reference to the whole instrument." *Tittle*, 463 F.3d at 419 (quotation omitted).

The parties dispute whether the Great American Umbrella Policy was excess to the EMC Umbrella Policy. An "excess insurance" policy is "an agreement to indemnify against any loss that exceeds the amount of primary or other coverage." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012). An excess insurance company's obligation to provide coverage generally does not arise until the underlying insurance limits are exhausted. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 137 (Tex. App.—Houston [14th Dist.] 1997, pet. granted), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692 (Tex. 2000).

No. 20-11113

Great American contends that the Great American Umbrella Policy's "retained limit" language indicated that it was excess to all other insurance; therefore, Great American was not obligated to provide coverage until the EMC Umbrella Policy was exhausted. Employers Mutual disagrees, arguing instead that the umbrella policies were *both* excess policies. Employers Mutual contends that the policies contained conflicting "other insurance" clauses,[3] which made the clauses mutually repugnant and thus required the insurers to contribute on a pro rata basis according to their limits of liability. *See Colony Nat'l Ins. Co. v. United Fire & Cas. Co.*, 677 F. App'x 941, 947 (5th Cir. 2017).

Construing the policies in accordance with Texas law, we agree that the Great American Umbrella Policy was excess to the EMC Umbrella Policy. Both policies provided coverage for liability "in excess" of a "retained limit." However, importantly, the policies differed in how they defined "retained limit." The EMC Umbrella Policy stated the following: "We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' . . . to which this insurance applies." The EMC Umbrella Policy defined "retained limit" as "the available limits of *all* '*underlying insurance*.'" "Underlying insurance," in turn, was limited to (1) any policies listed under the schedule of underlying insurance and (2) any other insurance available to the insured, but only when such other insurance "provides the same type of coverage" provided in the policies listed in the schedule of "underlying insurance." The only policy (relevant to this dispute) in the schedule of underlying insurance was the

---

[3] "[O]ther insurance clauses" are provisions designed to "limit liability if the insured event is also covered by another insurance policy." David P. Van Knapp, *Resolution of Conflicts, in Non–Automobile Liability Insurance Policies, Between Excess or Pro–Rata "Other Insurance" Clauses*, 12 A.L.R. 4th 993, 995 (1982).

Employers Mutual Primary Policy.[4]  Reading these provisions together, the EMC Umbrella Policy provided coverage *after* the limits of the underlying insurance (i.e., the primary policies) paid out.  In other words, the EMC Umbrella Policy provided coverage after all *primary* coverage was exhausted.

In contrast, the Great American Umbrella Policy stated that Great American would pay the sums "in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay."  "Retained Limit" included "the applicable limits of *any other insurance providing coverage* to the 'Insured' during the Policy Period."  Reading these provisions together, it follows that the Great American Umbrella Policy provided coverage *only* after *all* other insurance was exhausted, whether primary or excess.

Based on the plain terms of these policies, the Great American Umbrella Policy was the true excess policy after all other policies.  The EMC Umbrella Policy's "other insurance" provision contained clear limiting language, dictating that it would pay out after exhaustion of the primary policies.  The Great American Umbrella Policy was not a primary policy—therefore, it did not fall within the scope of Employers Mutual's "other insurance" provision.  Conversely, the Great American Umbrella Policy's broad "other insurance" clause did not include these same limitations—rather, it was required to pay out after *all* other insurance was exhausted.  Accordingly, we conclude that the Great American Umbrella Policy was the true excess policy, the EMC Umbrella Policy had priority of coverage, and

---

[4] The EMC Primary Policy provided liability coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . caused by an 'accident' and . . . [due to the] use of a covered 'auto.'"

Great American was not obligated to pay into the settlement until the EMC Umbrella Policy had been exhausted.[5]

## B. Allocation

We next consider whether Great American submitted sufficient evidence to create a factual dispute on allocation. The district court concluded that it did not, but we disagree. Because Great American's affidavits provided a reasonable basis for allocating damages, the district court erred in granting summary judgment to Employers Mutual.

In Texas, a party seeking coverage under an insurance policy must prove that its damages are covered by the relevant policy before it can recover. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400–01 (Tex. 2016). This process of segregating out covered and non-covered damages is known as "allocation." *See Satterfield & Pontikes Constr., Inc. v. U.S. Fire Ins. Co.*, 898 F.3d 574, 581 (5th Cir. 2018). The coverage-seeking party carries the allocation burden, and a failure to allocate covered and non-covered damages is fatal to recovery. *See Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971).

Thus, to satisfy its allocation burden at summary judgment, Great American was required to present evidence upon which a fact finder could segregate covered damages. *See Satterfield*, 898 F.3d at 581. This evidence could consist of "any facts that could have been considered in the [underlying] lawsuit itself," including "internal memoranda, correspondence between the insurer and insured, communications with the

---

[5] We disagree with Employers Mutual's "other insurance" clauses argument. These clauses do not mirror each other—rather, based on a plain reading of the policy language, *both* policies' "other insurance" clauses could apply harmoniously. Therefore, they were not mutually repugnant, and we decline to order contribution on a pro rata basis.

injured party, [and] investigative reports." *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 656–57 (5th Cir. 2008) (quotation omitted). Though Great American was not required to submit evidence establishing damages with "mathematical precision," it did need to provide evidence creating "some reasonable basis" for allocation. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 n.24 (5th Cir. 2004). Additionally, it was not necessary to have the actual settlement agreement in the Underlying Lawsuit provide the allocation. *See, e.g.*, *Cooper Indus. LLC v. Am. Intern. Specialty Lines Ins. Co.*, 350 F. App'x 876, 877–79 (5th Cir. 2009) (per curiam) (holding that the district court did not err in apportioning settlement even though "the settlement agreement did not allocate responsibility between" insurer and insured); *LGS Techs., LP v. U.S. Fire Ins. Co.*, No. 2:07-CV-399, 2015 WL 5934689, at *6 (E.D. Tex. 2015) (allocating settlement proceedings post-settlement agreement); *RLI Ins. Co. v. Phila. Indem. Ins. Co.*, 421 F. Supp. 2d 956, 958 (N.D. Tex. 2006) (same).

Employers Mutual argues that Great American failed to prove exactly what portion of the $7 million Settlement Agreement was allocated for settling claims that Employers Mutual was liable for. The parties agree that this means all claims other than Liberty Tire's direct (not vicarious) liability. Great American responds that exact apportionment was unnecessary—rather, the evidence established that the covered claims were worth *at least* $7 million. Therefore, according to Great American, there was a reasonable basis for allocation.

Great American's theory is premised on the following: the Underlying Plaintiffs had strong claims against Corona and Decker for their direct negligence and against Liberty Tire for its vicarious liability for Corona and Decker's negligence. These claims were undoubtedly covered by the EMC Umbrella Policy, so Employers Mutual was liable for the associated

damages.[6]  Great American contends that the value of these claims *alone* exceeded $7 million; thus, Great American paid *at least* $1 million to settle claims that Employers Mutual was liable for.  Because the Employers Mutual Umbrella Policy maxed out at $1 million, Great American reasons that there was no allocation issue, and it did not need to submit evidence detailing how much of the settlement went toward each claim and against each defendant.

At bottom, the allocation issue depends upon the sufficiency of Great American's summary judgment evidence.  To support its allocation theory and establish that the covered claims were worth at least $7 million, Great American submitted the affidavits of (1) Brent Anderson, Liberty Tire's attorney in the Underlying Litigation, and (2) Carol Euwema, Great American's lead adjuster for the relevant claims.

The Anderson affidavit concluded that the "evidence in the [underlying lawsuit] did not overwhelmingly support Plaintiffs' independent negligence claims against Liberty Tire."  Rather, the "reasonable settlement value" for the claims against Decker, Corona, and Liberty Tire for vicarious liability exceeded $7 million.  Anderson based this conclusion on the "discovery in the [underlying lawsuit], the Plaintiffs' alleged damages, the Plaintiffs' claims and theories of recovery, the venue of the [underlying lawsuit], Texas and federal law concerning Liberty Tire's vicarious liability,

---

[6] The EMC Umbrella Policy provided coverage for claims against Corona, as Corona is the directly insured party.  However, the EMC Umbrella Policy extended the definition of "insured" to "[a]nyone liable for the conduct of an insured . . . , but only to the extent of that liability."  Therefore, based on the plain language of the EMC Umbrella Policy, Employers Mutual was liable for claims against Liberty Tire, but only for Liberty Tire's vicarious liability for Corona.  Accordingly, to satisfy its allocation burden, Great American was required to submit evidence demonstrating that it expended settlement funds to resolve the vicarious liability claims against Liberty Tire.

the capabilities of the Plaintiffs' trial counsel, and [his] personal experience as defense counsel."

Similarly, the Euwema affidavit concluded that the evidence did not overwhelmingly support the Underlying Plaintiffs' negligence claims against Liberty Tire. Euwema also stated that "Great American's settlement payment was based primarily on concerns regarding . . . Corona and Liberty Tire's related vicarious liability." Euwema based her evaluation on the "discovery in the [underlying lawsuit], the Plaintiffs' alleged damages, the Plaintiffs' claims and theories of recovery, the venue of the [underlying lawsuit], applicable legal principles, the capabilities of the Plaintiffs' trial counsel, and [her] personal experience as an adjuster for claims against truck drivers."

The district court declined to consider these affidavits, holding that they were too conclusory to constitute proper summary judgment evidence. We disagree with that conclusion. The Federal Rules permit parties to rely on affidavits to oppose a motion for summary judgment if the affidavits are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).[7] An affidavit cannot sink below a level of "conclusoriness" if it is to provide the basis for a genuine issue of material fact, but the Anderson and Euwema affidavits do not fall below that threshold. The affidavits set forth the declarants' credentials, familiarity with the case, and underlying knowledge of the relevant law. The affidavits

---

[7] This is true even if the affidavit is self-serving and uncorroborated. *United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018) (en banc); *McClendon v. United States*, 892 F.3d 775, 785 (5th Cir. 2018) (agreeing with *Stein*'s reasoning in a tax case); *see also C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (per curiam) ("[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving.").

also list the numerous factors that Anderson and Euwema considered in their analysis. Because each affidavit described the facts supporting the declarant's ultimate conclusions, they were not conclusory and therefore were competent summary judgment evidence.

Drawing all inferences in favor of Great American, we hold that Great American submitted sufficient evidence to create a factual dispute on allocation. If true, these affidavits established that the covered claims Great American paid on behalf of Employers Mutual were worth at least $7 million—thereby triggering and exhausting the EMC Umbrella Policy. Because a fact finder could reasonably allocate damages, we hold that the district court erred in granting summary judgment.

## IV.    Conclusion

For the foregoing reasons, we REVERSE summary judgment in favor of Employers Mutual and REMAND to the district court for proceedings consistent with this opinion.[8]

---

[8] Because we conclude that Great American raised a fact issue that must be resolved, we do not reach its other arguments.