# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2023

Lyle W. Cayce
Clerk

No. 22-51114

Colony Insurance Company,

*Plaintiff—Appellant*,

*versus*

First Mercury Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-474

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:

First Mercury Insurance Co. and Colony Insurance Co. contributed to a settlement agreement related to an underlying negligence case against DL Phillips Construction, Inc. d/b/a Ja-Mar Roofing ("DL Phillips"), which both companies insured consecutively under commercial general liability insurance policies. After the settlement, Colony sued First Mercury, arguing First Mercury needed to reimburse Colony, under either a contribution or subrogation theory, for the full amount of its settlement contribution because First Mercury's policies covered all damages at issue. After the parties submitted cross-motions for summary judgment, the district court adopted the

No. 22-51114

magistrate judge's Report and Recommendation, granted summary judgment in favor of First Mercury, and denied summary judgment for Colony.

Colony appealed, arguing the district court erred by: (1) holding that First Mercury was responsible only for those property damages that occurred during the policy period, and in doing so, rejecting the "all-sums" approach to damages allocation; and, alternatively, by (2) finding no genuine dispute of material fact regarding the allocation of covered and non-covered damages. We AFFIRM.

## I.

## A.

This case began when Palmer Cravens, LLC hired DL Phillips to replace the roof of an outpatient clinic in McAllen, Texas in November 2012. DL Phillips completed the work on February 1, 2013, but the roof began leaking by March 2013. The leaks continued through March, April, May, June, and September 2013, and Palmer reported them to DL Phillips and eventually retained an inspector, Rick Guerra-Prats, to assess the property.

Guerra-Prats retained a consultant who inspected the roof and, on February 17, 2014, issued a report noting that there were serious roof defects causing the leaks. Shortly thereafter, Guerra-Prats obtained several estimates for re-roofing and additional repairs.

On June 16, 2014, Palmer sued DL Phillips, asserting claims of fraud, negligent misrepresentation, violations of the Texas Insurance Code, breach of fiduciary duty, breach of contract, breach of express warranty, breach of implied warranty, and negligence. While the lawsuit was pending, a strong rainstorm occurred in September 2014 and caused substantial water intrusion damage to the interior of the property. Additional water damage occurred in June 2018.

2

From 2012 to 2016, DL Phillips was insured by First Mercury and Colony. First Mercury issued two consecutive liability policies, each with a $1 million per occurrence limit of liability, to DL Phillips. The first was effective from April 21, 2012, to April 21, 2013, and the second was effective from April 21, 2013, to April 21, 2014. Then, Colony's coverage took over, also with a $1 million per occurrence limit. Colony's first policy provided coverage from April 21, 2014 to April 21, 2015, and its second policy was effective from April 21, 2015, to April 21, 2016.

The jury found in favor of Palmer and awarded him $600,000 in damages, but after Palmer's motion notwithstanding the verdict, the district court entered a judgment on December 11, 2018 against DL Phillips in excess of $3.7 million, which included $2.4 million for replacement of the roof and lost rental income and $590,000 in prejudgment interest. Colony and First Mercury initially defended DL Phillips under a reservation of rights, but Colony later sued DL Phillips and sought a declaration that its policy did not cover Palmer's claims.

Between March and April 2019, Palmer, DL Phillips, First Mercury, and Colony reached a confidential settlement agreement that addressed both Palmer's and Colony's lawsuits. Both Colony and First Mercury contributed to the settlement, though "First Mercury contributed slightly more than Colony," and the agreement expressly explained that some sums were "indemnity" payments while others were "supplementary" payments. As part of the settlement, Colony and First Mercury released all claims against each other except for the following exclusion:

> Colony and First Mercury reserve the right to pursue further claims as to the respective rights and obligations between Colony and First Mercury with regard to any reallocation and/or reimbursement for all amounts paid as indemnity and

supplementary payments, damages, costs, fees, or settlements paid to resolve the Underlying Lawsuit.

**B.**

After the settlement, Colony filed the present lawsuit against First Mercury seeking: (1) damages for First Mercury's alleged breach of the First Mercury policies; (2) a judicial declaration that First Mercury had a duty to indemnify DL Phillips for the full amount of the settlement and that First Mercury breached its policies by not doing so; and (3) Colony's attorneys' fees, pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, as a contractual subrogee of DL Phillips.[1] On cross-motions for summary judgment, the district court adopted the magistrate judge's Report and Recommendation, granted summary judgment in favor of First Mercury, and denied summary judgment for Colony.

In doing so, the district court found that Colony failed to raise a genuine dispute of material fact as to the scope of First Mercury's responsibility. Specifically, although both parties agreed that all damage was caused by a single "occurrence" (the defective roof installation), the court found that "Colony has not shown or raised a material fact issue that Fist Mercury is responsible for property damage that occurred after [its policies] expired." It also found that Colony failed to raise a material fact issue as to whether "monies [Colony] contributed to the settlement were for damages or supplemental payments covered under First Mercury's policies" because Colony did not "make any effort to valuate the property damage that occurred before the First Mercury policy expired." Instead, it contended that allocation was unnecessary because "First Mercury's policies cover[ed] all

---

[1] The district court vacated its judgment in Palmer's case on April 1, 2019 and dismissed it with prejudice on August 14, 2019.

of the property damages."[2] The court did not reach First Mercury's other arguments that Colony could not assert contribution or subrogation claims because "Colony [did] not raise[] a fact issue that defeats First Mercury's summary judgment."

On appeal, Colony argues the district court erred by: (1) holding First Mercury responsible only for property damage that took place during its policy periods, and in doing so, rejecting the "all-sums" approach to damages allocation; and, alternatively, by (2) finding no genuine dispute of material fact regarding allocation of covered and non-covered damages. Colony asks this Court to reverse the district court's grant of summary judgment and contends it is entitled to reimbursement from First Mercury for the entirety of Colony's settlement contribution because First Mercury was completely responsible for all the property damage at issue.

In response, First Mercury argues: (1) the district court properly applied Texas insurance law and interpreted the relevant policies when it concluded that First Mercury's policies do not cover all of the damages at issue in this case; and (2) Colony failed to create a genuine dispute of material fact regarding damages allocation and cannot recover payment on a contribution or subrogation theory. First Mercury posits that because portions of the settled loss are not covered by its policies, Colony needed to show that it paid for some damages covered by First Mercury's policies— and to do so, it had to present sufficient evidence for the district court to allocate the damages between the companies. Because Colony did not meet this burden, First Mercury argues it is not entitled to reimbursement.

---

[2] Of note, the magistrate judge's Report and Recommendation said that evidence of the allocation "may exist somewhere in the record from the Underlying Lawsuit, but it is not the undersigned's responsibility to search it out."

No. 22-51114

## C.

Several provisions of First Mercury's policy are at issue. To start, the policy agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." "Property damage" is defined as:

Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

The policy specifies that "property damage" is covered only if it "is caused by an 'occurrence' that takes place in the 'coverage territory'" and if the "'property damage' occurs during the policy period." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Although the policy's boilerplate language covered "any continuation, change or resumption of 'property damage' after the end of the policy period" (i.e., "paragraph c"), that language was expressly excluded from the final version of the policy by an endorsement. This endorsement, attached and integrated with the final version of the insurance policy, was entitled "CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION," explicitly deleted paragraph c ("Paragraph b (3), c and d are deleted in their entirety"), and stated that the "endorsement forms a part of the Policy to which attached." As such, for all intents and purposes, paragraph c's language was stricken from the policy.[3]

_____

[3] First Mercury also contends that the "mold exclusion" provision additionally limits its responsibility. The "mold exclusion" denies coverage for "'property damage'

No. 22-51114

## II.

This Court "review[s] grants of summary judgment *de novo*, applying the same standard as the district court."[4] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."[6]

## III.

First, we address Colony's argument that First Mercury's insurance policies covered all damages resulting from the roof defect (those reported in 2013, 2014, and 2018) and addressed by the settlement. Colony contends that Texas applies an "all-sums" approach to damage allocation, such that once an insurer's coverage is triggered by an "occurrence," the insurer is liable for *all* resulting damage no matter when it arises. But this reasoning conflicts with binding precedent from both the Texas Supreme Court and this Court.

---

which would not have occurred, in whole or in part, but for the actual, alleged or threatened . . . existence of, or presence of, any 'fungi' or bacteria . . . regardless of whether any other cause, event, material or product contributed" to the damage. The magistrate judge's Report and Recommendation did not address the mold exclusion, but it was not necessary to the outcome, and this Court need not address it here. Because First Mercury's policies did not cover property damage arising after the policies expired, *see infra* Section III.A, Colony's burden to allocate damages was triggered. Because Colony failed to meet this burden, the precise amount of damages excluded by the mold exclusion is irrelevant.

[4] *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Templet v. Hydrochem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)).

[5] FED. R. CIV. P. 56(a).

[6] *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021) (citing *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014)).

No. 22-51114

## A.

"Texas substantive law governs the insurance contracts at issue in this diversity action."[7] Under Texas law, courts "construe insurance policies according to the same rules of construction that apply to contracts generally" and aim to give effect to parties' intent.[8] While unambiguous insurance contracts are enforced as written, courts will resolve any ambiguities "in favor of coverage."[9] "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions."[10] Courts must also "give the policy's words their plain meaning, without inserting additional provisions into the contract."[11] When deciding distinct but related questions about an insurer's duty to defend, Texas courts have declined to issue one "universal rule" and instead have made clear that the text of the policy at issue is controlling: the Texas Supreme Court considers policy language before deciding which rule to apply, and different courts in Texas have applied different rules depending on the text of the relevant policy.[12] As the Texas Supreme Court described, "varying approaches reflect perceived differences in the policy language under review" as well as "different factual circumstances."[13]

---

[7] *VRV Dev. L.P. v. Mid-Continent Cas. Co.,* 630 F.3d 451, 456 (5th Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 276 (5th Cir. 2007)).

[8] *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) (citations omitted).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 25–30.

[13] *Id.* at 25 (citations omitted).

No. 22-51114

Typically, an insurer's duty to indemnify an insured cannot be established until after the completion of litigation, when liability is determined.[14] "This is because, unlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy."[15] "Initially, the insured has the burden of establishing coverage under the terms of the policy. . . . If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion."[16] If the insurer does so, then "the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage."[17]

Several cases in this Circuit and in the Texas Supreme Court squarely address this issue and, when read together, determine the scope of First Mercury's coverage. First, the Texas Supreme Court answered two certified questions to determine when coverage is triggered under occurrence-based liability policies in *Don's Building Supply, Inc. v. OneBeacon Insurance Co.*[18] There, the court evaluated a policy similar to the one at issue here and held that "property damage under this policy occurred when actual physical damage to the property occurred" because the policy defined "property damage as '[p]hysical injury to tangible property'" while "explicitly stating that coverage is available if and only if 'property damage occurs during the

---

[14] *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011).

[15] *Id.*

[16] *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citations omitted).

[17] *Id.* (citations omitted).

[18] *Don's Bldg. Supply, Inc.*, 267 S.W.3d at 23–30, 30–32.

No. 22-51114

policy period.'"[19] Thus, the court held that "property damage occurred when a home that is the subject of the underlying suit suffered wood rot or other physical damage," not when the damage was discovered (nor, by implication, when the initial installation of defective products occurred).[20]

Next, this Court in *Wilshire Insurance Co. v. RJT Construction, LLC* evaluated when insurance coverage was triggered under a policy that expressly covered only property damage that "occurs during the policy period [of June 2004 through June 2006]."[21] Citing *Don's Building Supply*, this Court held that, under Texas law, what matters is *when* the actual physical damage at issue arose, rather than when a but-for cause of the damage occurred.[22] In *Wilshire*, a home's foundation was repaired in 1999, but "cracks in the walls and ceilings" appeared in 2005 "allegedly caused by the faulty foundation."[23] This Court held that the occurrence of the cracks triggered coverage under the policy period even though their underlying cause occurred years prior:

> The cracks themselves are physical damage allegedly caused by the faulty foundation. This is not a case where latent internal rot long lies undiscovered before external signs warn of the festering damage. The cracks are not merely a warning of prior undiscovered damage; they are the damage itself. It is of no moment that the faulty foundation work occurred in 1999, or

---

[19] *Id.* at 24 (internal quotations omitted).

[20] *Id.* at 22, 24.

[21] *See generally Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222 (5th Cir. 2009).

[22] *Id.* at 225.

[23] *Id.*

No. 22-51114

that the damage was discovered in 2005; it matters only that damage was alleged to have occurred in 2005.[24]

Two years later, this Court reaffirmed *Wilshire* in *VRV Development L.P. v. Mid-Continent Casualty Co.*[25] In *VRV Development L.P.*, the insured argued that the court should consider damage arising after the insurance policies expired to have occurred at the same time as the but-for cause of the damage.[26] The Court rejected this "bootstrapping argument" and held that the alleged damage "occurred only when the [defective] retaining walls collapsed," which took place after the insurance policies expired, and not when the walls were first installed or when cracks first appeared, which occurred during the policy window.[27] Notably, the Court made this holding despite policy language that "property damage that occurs during the policy period 'includes any continuation, change or resumption of that . . . property damage after the end of the policy period.'"[28] It explained:

> What *Wilshire* recognized is that "property damage" does not necessarily "occur" at the first link in the causal chain of events giving rise to that property damage. Nearly all property damage will be traceable back to earlier events, but this is not the nature of our inquiry. As the Texas Supreme Court has instructed, we must focus on the time of the "actual physical damage" to the property, and not the time of the "negligent conduct" or the "process . . . that later results in" the damage. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 24, 29–30 (Tex. 2008). It may be difficult at times to determine

_____

[24] *Id.* (citations omitted).

[25] 630 F.3d 451, 457–58 (5th Cir. 2011).

[26] *Id.*

[27] *Id.*

[28] *Id.* at 458. This language was in the boilerplate version of First Mercury's policy but was excluded through an endorsement.

No. 22-51114

precisely when actual physical damage occurs, but we must draw a line somewhere. *Id.* at 29 ("Pinpointing the moment of injury retrospectively is sometimes difficult, but we cannot exalt ease of proof or administrative convenience over faithfulness to the policy language.").

Here, the homeowners' backyards and the City's easement were actually, physically damaged not by the negligent design and construction of the retaining walls, nor by a continuous exposure to the walls between May 2004 and May 2006, but rather by the "collapse" and "failure" of the walls in January and March 2007. In other words, this is not a case involving festering, undiscovered damage to covered property during the policy period. . . . This is a case in which potentially covered property damage occurred only after the policy period.[29]

Finally, the Texas Supreme Court's analysis in *Lennar Corp. v. Markel American Insurance Co.* is instructive.[30] Like the *VRV Development L.P.* policy, the policy at issue in *Lennar* broadly defined "property damage" (covering it "from a continuous exposure to the same harmful conditions"); but the *Lennar* court reached the opposite conclusion.[31] That is, the Texas Supreme Court found the insurance company in *Lennar* liable for the total

_____

[29] *Id.* (citations omitted).

[30] *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750 (Tex. 2013).

[31] *VRV Dev. L.P.*, 630 F.3d at 458; *Lennar*, 413 S.W.3d at 758. The polices in *Lennar* and *VRV Development L.P.* defined "property damage" to include damage caused by "continuous" exposure to harmful conditions, indicating that the insurers may be responsible for damage that occurs outside of the policy windows. First Mercury expressly excluded this language from its definition of "property damage" through its endorsement. However, First Mercury's policies utilized "continuous" language in their definition of "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This language, however, does not impact our analysis, as the parties do not dispute that the property damage stemmed from one single "occurrence." Moreover, the court in *Lennar* did not squarely address the policy language at issue here.

amount of water-related damage and resulting remediation costs for covered homes despite the fact that some damage occurred before and after the policy period.[32] It explained that the "policy is limited to property damage that occurs during the policy period but expressly includes damage from a continuous exposure to the same harmful conditions" such that, "[f]or damage that occurs during the policy period, coverage extends to the 'total amount' of loss suffered as a result, not just the loss incurred during the policy period."[33]

*Don's Building Supply Inc.*, *Wilshire*, *VRV Development L.P.*, and *Lennar* provide the general rule that occurrence-based liability policies are triggered when the actual physical damage at issue occurred, rather than when a but-for cause of the damage occurred;[34] however, if a policy covers "property damage" that includes continuous damage and as such, indicates an intent to cover damage occurring outside the policy period, the insurer may also be responsible for damages occurring outside of the policy's coverage period.[35]

As applied and pursuant to its policy language and the endorsement, First Mercury is responsible only for the damage that occurred during the applicable policy periods, not all damage resulting from the initial roof defect. Like the insurers in *Don's Building Supply* and *Wilshire,* First Mercury's policies limited its liability to property damage that occurred during the policy periods. And unlike the insurers in *VRV Development L.P.* and *Lennar*,

---

[32] *Lennar*, 413 S.W.3d at 758.

[33] *Id.*

[34] *See Don's Bldg. Supply, Inc.*, 267 S.W.3d at 24; *Wilshire*, 581 F.3d at 225; *VRV Dev. L.P.*, 630 F.3d at 457–58.

[35] *Lennar*, 413 S.W.3d at 758.

No. 22-51114

First Mercury expressly declined to extend coverage to property damage that resulted from continuous exposure to the same harmful conditions beyond its policy terms.[36] Moreover, absent clauses to the contrary, this Circuit has hesitated to condone "bootstrapping" arguments that would hold insurers responsible for damage occurring outside of the policy periods.[37] Holding First Mercury responsible only for the property damage that arose during its policy period, then, is consistent with Texas Supreme Court and this Court's precedent.[38]

**B.**

Colony's arguments to the contrary are unpersuasive. Colony relies on *American Physicians Insurance Exchange v. Garcia* to argue Texas applies an "all-sums" approach to damage allocation, such that an insurer is responsible for all damages that stem from an occurrence if that occurrence

_____

[36] *Compare id.* at 757 ("The policy obligated Markel [the insurer] to pay 'the total amount' of Lennar's loss 'because of' property damage that 'occurred during the policy period', including 'continuous or repeated exposure to the same general harmful condition.'") *with* First Mercury's policy (explaining that "property damage" is covered only if it "occurs during the policy period" and specifically deleting the boilerplate paragraph that would provide coverage for "any continuation, change or resumption" of "'property damage' after the end of the policy period").

[37] *See Wilshire*, 581 F.3d at 225 (denying a "bootstrapping" argument that would hold an insurer liable for property damage occurring beyond its policy period absent express language to the contrary). Moreover, the Court has hesitated to condone such arguments even when the contract expressly contemplates them. *See VRV Dev. L.P.*, 630 F.3d at 457–58 (denying a "bootstrapping" argument and reaffirming *Wilshire* despite contractual language providing coverage for "any continuation, change or resumption of that . . . property damage after the end of the policy period").

[38] That the parties agree the damage stemmed from one single "occurrence" does not impact our analysis: *Wilshire* instructs that when interpreting such agreements, we examine when the property in question suffered actual physical damage, not when a but-for cause of property damage occurred. 581 F.3d at 225.

14

transpires during the policy period.[39] However, this argument misuses *Garcia*. First, *Garcia* did not consider the question here: whether an insurer is responsible for property damage that arose after its policies expired (here, post-April 21, 2014 damage), or only property damage that arose during its policy period, when the insurance contract expressly limits coverage as such. Instead, *Garcia* considered whether the insurer breached its duties to defend or settle when some of the bodily injury at issue occurred before the policies took effect.[40] Second, *Garcia* provides no guidance as to how this Court should determine when property damage occurs under a given insurance policy. Third, while it is true that *Garcia* cites *Keene Corp. v. Insurance Co. of North America*, a case from the D.C. Circuit which adopted the "all-sums" approach to allocation, the *Garcia* court by no means held that it would adopt such an approach itself.[41] Ultimately, contrary to Colony's argument, *Garcia* simply stands for the proposition that if an occurrence triggers more than one policy, insurers should allocate the damages among themselves, but an insured may collect only one award.[42] This holding is inapplicable here.[43]

---

[39] 876 S.W.2d 842 (Tex. 1994).

[40] *See generally id.*

[41] *Keene Corp. v. Insurance Co. of N. Am.*, 667 F.2d 1034 (D.C. Cir. 1981).

[42] *Garcia*, 876 S.W.2d at 853–55.

[43] Colony cites four additional cases, but they too carry no weight. First, Colony cites *CNA Lloyds of Tex. v. St. Paul Ins. Co.*, 902 S.W.2d 657 (Tex. App.—Austin [3rd Dist.] 1995), *writ dism'd by agr.* (Nov. 16, 1995), as an example of when Texas courts have applied the "all-sums" approach, but nowhere in that case does the court do so. Rather, the brawling insurers stipulated that coverage was triggered under both polices; the question before the court was how liability should be allocated among multiple insurers and focused on interpreting "other insurance" clauses. *Id.* at 659–61. The court did not hold that an insurer is responsible for property damage that occurs outside its policy period.

Next, Colony cites *Maryland Cas. Co. v. S. Texas Med. Clinics, P.A.*, No. 13-06-089-CV, 2008 WL 98375 (Tex. App.—Corpus Christi & Edinburg [13th Dist.] Jan. 10, 2008) (mem. op.) and *Mid-Continent Cas. Co. v. Acad. Dev., Inc.*, No. H-08-21, 2010 WL 3489355

No. 22-51114

## IV.

Because we find First Mercury is not responsible for damages that arose after its policies ended, we turn to the second question: has Colony created a genuine dispute of material fact as to whether it paid for damages covered by First Mercury's policies, such that it could be entitled to reimbursement under a contribution or subrogation theory? To do so, Colony must have presented sufficient evidence before the district court to demonstrate how the settlement contributions were allocated in order to show a genuine possibility that it paid for damages that should have been covered by First Mercury. It did not.

## A.

Under Texas law, insurers may seek reimbursement under the doctrines of contractual and equitable contribution or contractual and equitable subrogation.[44] Generally, equitable contribution may be available:

> [I]f two or more insurers bind themselves to pay the entire loss insured against, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurer, or co-insurers, for a ratable proportion of the amount paid by him,

---

(S.D. Tex. Aug. 24, 2010), *aff'd*, 476 F. App'x 316 (5th Cir. 2012) (per curiam) (unpublished). But these cases are inapposite, as they both address the broader question of whether the insurer had a duty to defend the insured.

Lastly, *Mid-Continent Casualty Co. v. Castagna* focused on whether it was necessary to allocate covered property damage that spanned multiple policies issued by *the same insurance company* to receive coverage; it did not speak to the questions present here. 410 S.W.3d 445, 453–55 (Tex. App.—Dallas [5th Dist.] 2013, pet. denied).

[44] Colony fails to cite a contractual basis for a contribution or subrogation claim on appeal, *see infra* note 65.

No. 22-51114

because he has paid a debt which is equally and concurrently due by the other insurers.[45]

To qualify for equitable contribution, the insurers must have: (1) shared a common obligation or burden; and (2) the insurer seeking contribution must have made a compulsory payment or other discharge of more than its fair share of the common obligation or burden.[46] A common obligation arises if two insurances policies "insure the same party, the same interest, and the same risk."[47] However, "pro rata" or "other insurance" clauses (present here) may preclude direct equitable contribution claims because if "no contractual obligations exist between co-insurers to apportion between themselves the payment on behalf of the insured . . . we are not persuaded to create such an obligation under the common law."[48]

If insurers are not entitled to contribution, they may still seek subrogation.[49] "A right to subrogation is often asserted by one who pays a debt owed by another."[50] Under Texas law, there are two types of

---

[45] *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007) (citing *Traders & Gen. Ins. Co. v. Hicks Rubber Co.*, 169 S.W.2d 142, 148 (Tex. 1943)).

[46] *Mid-Continent Ins. Co.*, 236 S.W.3d at 772.

[47] *Mt. Hawley Ins. Co. v. Lexington Ins. Co.*, 110 F. App'x 371, 376 (5th Cir. 2004) (per curiam) (unpublished). It is important to note that this rule does not come from the Texas Supreme Court, and there is little precedent from the Texas Supreme Court about whether the "common obligation" relates to the underlying policy, the underlying settlement, or a contractual obligation between the insurers.

[48] *Mid-Continent Ins. Co.*, 236 S.W.3d at 773.

[49] *Id.* at 774 ("[P]ayment of the insured's entire loss by one co-insurer does not relieve the other co-insurers' contractual obligations to the insured to pay their pro rata share of the loss. . . . The implication is that the insured would still have a right to enforce the contractual obligation, and presumably, that the co-insurer seeking reimbursement could be subrogated to this right.") (citations omitted).

[50] *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 143 (Tex. 2008) (internal citation omitted).

No. 22-51114

subrogation: contractual and equitable.[51] Contractual subrogation "is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss."[52] In contrast, equitable subrogation "does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter."[53] "In either case, the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, [and] subject to any defenses held by the third party against the insured"[54] and the right to subrogation is limited by "the contractual and common law duties an insurer owes its insured."[55] When a loss includes both covered and non-covered damages (as here), the insured bears the burden of "allocating" the amount owed between covered and uncovered losses—otherwise, the court "must assume that all of the settlement proceeds went first to satisfy the covered damages."[56]

To prevail on its contribution or subrogation claims, Colony must present sufficient evidence upon which a reasonable factfinder could

---

[51] *Mid-Continent Ins. Co.*, 236 S.W.3d at 774.

[52] *Id.*

[53] *Id.* (citations omitted).

[54] *Id.* (citations omitted).

[55] *Id.* at 775.

[56] *Satterfield & Pontikes Constr., Inc. v. United States Fire Ins. Co.*, 898 F.3d 574, 583 (5th Cir. 2018); *see also Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citation omitted) ("Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. . . . Otherwise, failure to segregate covered and noncovered perils is fatal to recovery.").

conclude that it paid a debt owed by First Mercury.[57] To do so, Colony could "present evidence upon which a fact finder could segregate covered damages," such as "internal memoranda, correspondence between the insurer and insured, communications with the injured party, [and] investigative reports."[58] While "mathematical precision" is not required, there does need to be "some reasonable basis for allocation."[59]

**B.**

Colony is entitled to reimbursement from First Mercury for its settlement contributions only if it paid more than its fair share of the costs, meaning it paid for damages covered by First Mercury's policies. *Great American Insurance Co. v. Employers Mutual Casualty Co.* provides a framework for this Court to determine whether Colony met its burden to create a genuine dispute of material fact regarding this allocation.

The Court in *Great American* found sufficient evidence that created a reasonable basis for the jury to believe there was unfair allocation when: (1) one insurer paid nothing; (2) the other paid the entirety of the settlement; and (3) there was evidence that the total value of the claims against the first

---

[57] *See Mid-Continent Ins. Co.*, 236 S.W.3d at 772 ("The right of action is one of contribution, the elements of which require . . . that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden."); *id.* at 774 ("Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss."); *Frymire*, 259 S.W.3d at 142 ("[A] party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief.").

[58] *Great Am. Ins. Co. v. Emp'rs. Mut. Cas. Co.*, 18 F.4th 486, 492 (5th Cir. 2021) (citation omitted).

[59] *Id.* (citation omitted).

insurer would have *exceeded* the total value of the settlement.[60] In other words, the second insurer necessarily overpaid because it paid the entire amount of the settlement even though the first insurer was responsible for damages that eclipsed the amount of the settlement.

## C.

Colony maintains that, like the insurer in *Great American*, it introduced sufficient evidence that it overpaid in the settlement. As evidence of this claim, Colony provided three estimates of the degree of roof damage that occurred during First Mercury's policy period.[61]

However, contrary to *Great American*, this evidence does not show that the claims against First Mercury exceeded the value of the settlement (or that they exceeded First Mercury's portion of payment).[62] The estimates

---

[60] *Id.* at 492–94.

[61] Colony provided three estimates indicating the cost to repair the property damage that occurred during First Mercury's policy period. Baldwin Roofing issued two estimates to repair the clinic's roof, and Guerra Prats Construction provided a third, more comprehensive estimate that addressed the roof damage and repairs to the HVAC system. Based on the parties' briefings and the Court's review of the estimates, this Court understands these to be competing, not cumulative, estimates to repair the same damage.

[62] The magistrate judge's Report and Recommendation, adopted by the district court, agreed:

> Colony has not offered any evidence that the amount it contributed toward indemnity was for property damage that took place before First Mercury's policy expired. . . . In response to First Mercury's summary judgment motion, Colony again relies on its assertion that First Mercury's policies cover all of the property damages and therefore argues First Mercury is responsible for Colony's contribution to the settlement. . . . Colony did not, in the alternative, make any effort to valuate the property damage that occurred before the First Mercury policy expired.

The Report also noted that the "evidence may exist somewhere in the record from the underlying lawsuit, but it is not the [court's] responsibility to search it out." But even

No. 22-51114

indicated "X" worth of damage that occurred during First Mercury's policies,[63] but First Mercury paid more than "X" dollars in the settlement—more than the claims raised against it. Given that math, Colony's evidence does not give rise to a reasonable belief of wrongful allocation.[64]

Because Colony did not prove—or even create a genuine dispute—that it paid for damages that First Mercury should have covered, its contribution and subrogation claims must fail.[65] And given that we resolve

_____

after conducting a "search" for such evidence, this Court was unable to find enough that would create a genuine dispute as to damages allocation.

[63] Because the settlement agreement was confidential, this Court will not disclose the exact amount of payments.

[64] Alternatively, First Mercury argues Colony waived this issue because "Colony consistently argued no segregation was necessary because the loss was entirely covered by the First Mercury policies and entirely excluded by the Colony Policy" and that it "only offered the argument and evidence it presents now in its Objections to the magistrate judge's Report and Recommendation." But this argument is unpersuasive. The record is clear that Colony has previously raised the question of allocation and presented this evidence before the district court.

First Mercury also argues Colony did not provide testimonial evidence, as the parties did in *Great American*, to support its allocation argument, and that it instead "belatedly asked the District Court to consider the entirety of the summary judgment record, which the District Court had no obligation to undertake and which this Court also has no obligation to undertake." This contention, too, is unpersuasive, as Colony did cite estimates prepared by experts and testimony from experts, DL Philips employees, contractor invoices, and photographs.

[65] Neither the magistrate judge nor the district court addressed Colony's contribution or subrogation arguments. Because we find First Mercury responsible only for those damages that occurred during the policy period, and because First Mercury's settlement payments exceeded Colony's evidence of damages covered by First Mercury's policies, there is also no basis for this Court to hold that First Mercury breached its contractual or equitable duty to reimburse Colony or DL Phillips.

In brief: first, there is no contractual basis for a contribution or subrogation claim. The closest Colony comes to citing a contractual basis on appeal is the claim that First Mercury "expressly agreed with Colony to litigate this coverage dispute as a term of the underlying settlement." However, this argument is misleading and does not provide a

this case based on the absence of a genuine dispute regarding allocation, we need not reach the parties' other arguments regarding contribution and subrogation.[66]

## V.

The plain language of First Mercury's policies, as well as binding case law from Texas and this Court, indicate First Mercury is liable for only a portion of the damages at issue. This finding triggered Colony's burden to present sufficient evidence that would create a genuine dispute of material fact about whether there was an unfair allocation of damages. It failed to do so. Thus, Colony's contribution and subrogation arguments fail. We

_____

contractual basis: the settlement only contains a *reservation* of rights "to pursue further claims"; it does not provide a contractual right to receive reimbursement or even serve as an express agreement to litigate.

Second, Colony's equitable contribution claim must fail because Colony failed to prove, or create a genuine dispute, that it paid for more than its fair share of damages. Lastly, regarding subrogation, there is no evidence First Mercury breached any equitable or contractual duties it held to DL Phillips. If anything, First Mercury overpaid. Thus, using the methodology outlined in *Great American*, Colony did not pay more than its fair share and is not entitled to either form of relief.

[66] To note these alternative arguments: First Mercury contends "Colony denies sharing a common obligation with First Mercury to fund the settlement" and that they both "issued polices covering different policy periods," such that Colony cannot recover under an equitable contribution theory (because, by implication, the parties do not insure the same interest or the same risk). Colony, on the other hand, fails to adequately respond to these contentions and argues (1) it "expressly agreed with" First Mercury to litigate the coverage dispute in the settlement; and (2) *Mid-Continent* has been read narrowly by this Court and limited to the facts of that case. While this Court need not reach these arguments, we note that (1) as previously described, the settlement only contains a *reservation* of rights "to pursue further claims," not an express agreement to litigate; and (2) while this Court has "rejected a broad view of *Mid-Continent*," it has done so on grounds not relevant to this case. Additionally, as explained *supra* note 47, Texas law about the meaning of "common obligation" remains unclear.

No. 22-51114

AFFIRM the district court's grant of summary judgment to First Mercury and its denial of summary judgment to Colony.